TRAILMOBILE *v.* ROBINSON.

5-1207                                    302 S. W. 2d 786

Opinion delivered June 3, 1957.

[Rehearing denied July 1, 1957]

916

ሰባ ተፈ

*Lovell & Evans* and *Darrell D. Dover,* for appellant.

*Crouch & Jones, Russell Elrod, Wade & McAllister,* and *DeLoss McKnight,* for appellee.

CARLETON HARRIS, Chief Justice. John Norman, a sales representative for Trailmobile, Inc., appellant herein, called upon Joe Robinson, appellee herein, who is engaged in the wholesale produce and trucking business in Springdale, Arkansas, for the purpose of soliciting an order for refrigerated trailers. Robinson was sufficiently interested in two used refrigerated trailers held by the company in Kansas City, and priced at $12,500 each, to go with Norman to Kansas City to examine them. On the return trip, appellee offered to purchase these refrigerated trailers for $23,800, and the following morning, after contacting company officials, Norman presented appellee with a sales order dated June 8, 1955, for two used 1955 CID 8512 Trailmobile Trailers with Thermo-Kings. On the next day, appellee executed his promissory note to appellant in the sum of $23,731.22, said note being secured by a chattel mortgage on the equipment purchased. This note was payable in thirty-five equal successive monthly installments in the amount of $659 each, (final payment to be $666.22), commencing on July 10, 1955. The note provided for interest after maturity at the highest lawful rate, together with reasonable attorney's fees. It further provided that upon failure to pay any installment when due, all remaining installments should, at the option of the holder, become immediately due and payable. The

chattel mortgage, of even date, securing the note, described the equipment as follows:

| Name of Manufacturer | Manufacturer's Serial No. | Type & Model | Description of Body | Year | Other Identification |
|---|---|---|---|---|---|
| Trailmobile | 1-00972 | C-8512 | Insulated Van | 1955 | Shiftable Tandem Thermo-King TK-5192 |
| Trailmobile | 1-00973 | C-8512 | Insulated Van | 1955 | Shiftable Tandem Thermo-King TK-8232 |

The two trailers were delivered to appellee, one being equipped with a 1955 model Thermo-King refrigeration unit, and the other with a 1952 model Thermo-King refrigeration unit. The invoice showed the price of the trailers as $11,900 each. About three weeks after the purchase, the 1952 model Thermo-King unit "broke down", and had to be repaired. A representative of Thermo-King sent a message to Robinson inquiring if he (appellee) knew that he had an "old model Thermo-King on that new trailer." Appellee, who had, a short time previously, sent a check to appellant as his first payment on the note, stopped payment on the check. No adjustment was made, and no further payment was made, and on the due date of the second payment, appellant filed suit on the note alleging it had elected to accelerate the entire balance of the note, seeking judgment for $23,731.22, together with 10% interest from July 10, 1955, and 10% of said sum as attorney's fees. An order of attachment for the property was sought and prayer was that the sheriff of Washington County hold the vehicles subject to the outcome of the action; that said vehicles be sold to satisfy the judgment, and "the plaintiff herein have judgment for any deficiency between the sale price of the said vehicles and the cost of this action and the amount of said judgment against the defendant herein. * * *" Bond for specific attachment in the sum of $50,000 was made. Appellee filed

a corporate surety bond in the sum of $23,731.22, plus interest thereon from July 10, 1955, at the rate of 10% per annum, and the costs of the action, conditioned that Robinson "shall perform the judgment of the court in this action." Robinson filed a general denial and a counterclaim alleging a breach of warranty, and asking for judgment for $4,000. An amendment was filed to the counterclaim and later an amended and substituted counterclaim was filed. After the filing of additional pleadings by appellant, the cause was set for trial for March 16, 1956. On March 15, appellee filed an amendment to his Amended and Substituted Counterclaim. The gist of appellee's contentions, as set forth in the pleadings, was that he did not receive the kind of Thermo-Kings that he was supposed to receive under the contract; that he was due two used 1955 models, but instead, received one 1955 model and one 1952 model; that the 1952 model was defective and unfit for the purpose for which it was purchased; that appellant refused to make any adjustment, and had breached the contract. The following day, appellant filed its motion to strike said amendment from the pleadings. The court declined to do so, and the cause proceeded to trial. At the conclusion of the evidence, the jury returned a verdict for appellant in the amount of $20,931.22, plus interest from July 10, 1955. Subsequent thereto, appellee filed motion for Judgment Notwithstanding Verdict, setting up that the jury, in finding that appellee was entitled to a credit in the amount of $2,800, actually found that appellee was not in default at the time of the filing of the suit and issuance of attachment, and that a proper instruction and form of verdict would have given the jury an opportunity to specifically find that appellee was not in default of the note sued upon, and that appellant accordingly was not entitled to accelerate the indebtedness. Appellant filed its response to the motion setting up that it should be overruled in all particulars, and on April 19, 1956, the court entered the following judgment in compliance with the motion:

"On this the 16th day of March, 1956, this cause comes on to be heard. The plaintiff appearing in per-

son and by attorneys and the defendant appearing in person and by attorneys; whereupon, both parties announced ready for trial.

"A jury composed of Bob Stout and eleven others of the regular panel of petit jurors of this court was selected and impaneled and sworn according to law to try the issues of fact arising in this case; and after hearing all the evidence introduced; the instruction of the Court and the argument of counsel, the said jury retired to consider its verdict; and after deliberating thereon, returned into Court the following verdict:

'We the jury find for plaintiff and fix his amount of recovery against the defendant at sum of $20,931.22 plus interest from July 10, 1955.

(Amount of recovery not to exceed $23,731.22 and not) (to be less than $20,931.22).

(s) Bob Stout Foreman'

"whereupon defendant, Joe Robinson, filed Motion for Judgment notwithstanding Verdict on March 28, 1956, to which Motion plaintiff Trailmobile, filed Response dated April 5, 1956. The Court, having taken the Motion For Judgment and Response under advisement, finds as follows:

"1. That plaintiff, Trailmobile, filed writ of attachment and posted surety bond at commencement of suit, August 10, 1955, to recover $23,731.22 principal and interest on note.

"2. That plaintiff, Joe Robinson posted surety bond in the sum of $23,731.22, signed by The Employer's Liability Assurance Cor. Ltd. dated August 11, 1955, guaranteeing to pay any judgment of the Court and that posting of said surety bond constituted tender and that Joe Robinson was not in default at time of filing of suit or at any time during pendency of this suit.

"3. That Joe Robinson filed counterclaim for $4,000 and that the jury found defendant, Joe Robinson, was entitled to $2,800 set off against claim of plaintiff.

"4. That Joe Robinson has tendered into Court, on March 20, 1956, and April 10, 1956, the sum of $3,-790, as balance of principal and $85.13 interest on payments due on July 10, August 10, September 10, October 10, November 10 and December 10, 1955, and January 10, February 10, March 10 and April 10, 1956.

"5. That plaintiff is entitled to judgment against defendant for payments from July 10, 1955 to April 10, 1956, same being a total of $6,590, less $2,800 set-off leaving a balance of $3,790, principal, and $85.13 interest.

"IT IS, THEREFORE, ORDERED AND ADJUDGED, that Trailmobile, Inc., do have and recover of and from Joe Robinson, the sum of $3,790 and $85.13 interest, which sums having been tendered into Court are ordered paid to plaintiff by the Clerk of this Court and that the said judgment in the sum of $3,875.13 is thereupon satisfied in full.

"Judgment prepared and entered this 19th day of April, 1956.

(s) Maupin Cummings

Circuit Judge"

From said judgment, appellant brings this appeal, basing its contention for reversal on several alleged errors, which we shall proceed to discuss.

It is first contended that the court erred in refusing to grant appellant's motion to strike the Amendment to the Amended and Substituted Counterclaim. As this Court has many times said, the matter of permitting amendments to pleadings is one that lies largely within the province of the trial court. *Austin* v. *Dermott Canning Co.,* 182 Ark. 1128, 34 S. W. 2d 773. Nor does it appear that the issues were drastically changed by the amendment. No motion for continuance was filed by appellant, and we conclude that the court did not abuse its discretion in permitting the filing of the amendment.

It is next contended that the court erred in permitting parol evidence to explain the sales order signed by appellee. Appellant contends that the admission of such oral evidence enabled appellee to vary the terms of the agreement; that the agreement was not ambiguous, and accordingly, the admission of such testimony was error. The sales order described the property to be sold as "2-Used 1955 CID 8512 Trailmobile Trailers with Thermo-Kings (Nos. R-42-76 and R-42-77)", and the chattel mortgage made further identification (as heretofore set out in stating the case). The trial court held that these instruments did not clearly identify the property (Thermo-Kings) to be purchased, and that parol evidence was thereby admissible. We agree that the contract is ambiguous. A mere reading of the instruments does not make clear as to whether the parties contracted for two used 1955 trailers and two 1955 Thermo-Kings or whether the contract called for two used 1955 trailers with Thermo-Kings of any year model. Parol evidence was therefore admissible. In *Lutterloh* v. *Patterson*, 211 Ark. 814, 202 S. W. 2d 767, Mr. Justice Robins, in speaking for the court, said: "Therefore the lower court should have admitted the testimony as to the circumstances surrounding the execution of the contract and as to the construction the parties themselves, by their words and actions, put upon it; and should have permitted the jury, upon a consideration of all the competent testimony, to say what was intended by this uncertain language." The above finding makes unnecessary any discussion of the third point, which is that the court erred in refusing to direct a verdict for appellant in the amount sued for.

It is next contended that the court erred by giving a binding instruction to the jury, and in defining the law relative to parol evidence. In paragraph four of its instructions, the court stated: "It is the contention of the defendant in his counterclaim that the contract entered into between the parties, which contract is admitted, calls for the delivery of two pieces of used equipment, namely two Trailmobile trailers with Thermo-Kings attached, 1955 model." Appellant argues that

by telling the jury the contract was admitted, the court bound the jury to find that said contract called for 1955 Thermo-Kings. We do not agree with this interpretation. The execution of the contract was admitted by both parties, and the instruction makes clear that it is *only the contention* of appellee that the contract called for 1955 model Thermo-Kings. Appellant contends that other paragraphs of the court's instructions bind the jury, but we have examined each contention, and find no merit in them, nor can we agree that the court erroneously defined the law relative to parol evidence. This brings us to a discussion of appellant's strongest contentions.

It is asserted that the court erred in granting a judgment notwithstanding the verdict, and further, the judgment entered is erroneous because the redelivery bond given by the appellee to the sheriff was not a tender of the amount due, and appellee was in default at the time the action was filed. We will discuss first the sufficiency of the tender.

Appellant vigorously argues that the redelivery bond filed by appellee did not constitute a valid tender, contending that a "tender" is an unconditional offer of payment, consisting in the actual production, in current coin of the realm, of a sum not less than the amount due on a specific debt or obligation. We deem it well to quote from Vol. 12, Am. Jur., Sec. 334, p. 891:

"It may be pointed out that some misapprehension or confusion appears to have arisen from the mode of expression of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word "tender" as used in such a connection does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, nothing further remains to be done, and the transaction is completed and ended; but it means only a readiness and willingness accompanied with an ability on the part of one of the parties to do the acts which the agreement requires

him to perform, provided the other will concurrently do; the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed imply, an offer or tender in the sense in which those terms are used in reference to mutual and concurrent agreements. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is, in its nature, conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement. * * *,,

In the instant litigation, appellee contended that appellant had not performed its contract (in that he (appellee) received a 1952 Thermo-King instead of a 1955 model), and testified that appellant was unwilling to make an adjustment. It would indeed be unfair to require one to make tender of a specific amount of money claimed by another, when the first party did not receive the specific property that he originally purchased. Appellee was entitled to show that appellant had breached its contract before tendering a money payment. The jury, by its verdict, found that appellant had breached the contract, and the execution of the redelivery bond showed a "* * * readiness and willingness accompanied with an ability * * *," to do that required of him, provided appellant would do that which it was required to do under the contract.

It is urged that the court committed reversible error in entering the j u d g m e n t *non obstante veredicto.* Though it is called a "judgment notwithstanding verdict", actually, the action of the court amounted only to correcting or amending the verdict to conform to the findings of the jury. Let it be remembered that the entire litigation hinged upon the question as to whether appellee was to receive two 1955 model Thermo-Kings under his contract. The verdict rendered by the jury was, of course, entirely contradictory, for on the one hand, they found that appellee's contention was correct, and that he was entitled to judgment on his counter-claim for $2,800. This had the effect of finding that

appellee was not in default, since the amount of his recovery was greater than the amount due appellant at the time of the filing of the suit. On the other hand, the verdict found the entire indebtedness due appellant (less the $2,800) to be due and payable. Appellant, of course, was not entitled to accelerate the indebtedness except that appellee be in default. This was a complete inconsistency. In finding for appellee on his counterclaim, the jury could not properly or legally accelerate the indebtedness. The question of amendment of the verdict was discussed in the case of *Woodruff* v. *Webb,* 32 Ark. 612. Under Headnote 3 we find:

"VERDICT: Amendment of. Where the intention of the jury to return a verdict responsible to the issue is manifest, but under a mistake of law, and not of any fact in the case, their intention is incorrectly expressed, it is the duty of the court below to have the verdict reduced to, and entered in proper form. * * *"

From the language of Justice Harrison:

"* * * The obvious intention of the jury was to find for the plaintiff, the amount of the principal and interest of the note; but under a misapprehension as to the rate of interest it bore after maturity, and which was a mistake as to law, and not as to the facts of the case, their intention was incorrectly expressed. * * *" Justice Harrison then quoted from cases from other jurisdictions as follows:

"* * * It needs only to be understood what the intent of the jury was, agreeably to which, the verdict may afterwards be molded into form. * * *"

Again:

"* * * The courts are competent to collect the meaning of the jury from the terms of their verdict, * * * the general rule is that, although the verdict may not conclude formally or punctually in the words of the issue, yet, if the point in issue can be concluded out of the finding, the court shall work the verdict into form, and make it serve according to the justice of the case."

To the same effect is the holding in *Colky* v. *Metropolitan Life Insurance Company*, 320 Ill. App. 120, 49 N. E. 2d 830. As stated in Vol. 89, *Corpus Juris Secundum*, 198:

"While the court has no power to look into the evidence and revise or amend the verdict as to a finding of fact, or in any manner to invade the province of the jury by substituting or adding the conclusion or verdict of the court as to a substantial or material matter, there are numerous cases to the effect that the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings into effect, where the intention can be ascertained with certainty, * * *."

We therefore conclude that the action of the trial court was proper.

Since the jury, by its verdict, found that appellant had breached its contract, and since the amount awarded appellee was greater than any sum due appellant at the time of institution of the suit, it must accordingly be held that appellee was not in default. Since he was not in default, appellant is not entitled to attorney's fees.

The judgment of the trial court is, in all things, affirmed.

Justice McFADDIN dissents.

ED. F. McFADDIN, Associate Justice (dissenting). While I think that the Circuit Court judgment, as finally entered, probably accomplished substantial justice, nevertheless I am compelled to dissent, because:

1. I think it was error to admit oral evidence concerning the written contract.

2. I am convinced that the bond filed by Robinson was not such a *tender* as the law requires in tender cases.

3. I am also convinced that the judgment entered by the Court should not have been entered. It is not a

judgment *non obstante veredicto,* but is a judgment construing what the Trial Judge thought the jury intended to accomplish. It is my view that the most the. Trial Court could have done was to set aside the verdict and grant a new trial: the Judge could not enter a judgment of his own in the place of a judgment on the jury verdict.