R. C. TRAYLOR v. Harold HUNTSMAN d/b/a
HUNTSMAN FARM STORE and
ALLIS-CHALMERS MFG. CO.

5-6097                                   488 S.W. 2d 30

Opinion delivered December 18, 1972

*Guy H. Jones, Phil Stratton & Guy Jones Jr.,* for appellant.

*House, Holmes & Jewell,* by: *Don F. Hamilton,* for Allis-Chalmers; *George F. Hartje,* for Huntsman.

FRANK HOLT, Justice. Appellee Huntsman, a retailer, sold the appellant a farm tractor. Huntsman brought this action to collect the alleged balance owed on the tractor and to foreclose a lien. Appellant filed an answer and, also, responded with a counter-claim against Huntsman and a third-party complaint against appellee Allis-Chalmers, the manufacturer of the tractor. Upon appellant's motion, the cause was transferred from Chancery to Circuit Court. After the evidence by Huntsman and appellant was presented, the court granted appellee Allis-Chalmers' motion for a directed verdict. At the close of all the evidence the court directed a verdict in favor of Huntsman as to appellant's counter-claim for crop damages. The jury verdict was in favor of Huntsman for $9,250 as being the balance due him on the purchase price of the tractor. The jury verdict, also, directed "delivery of the hitch" as provided in the contract. The court, with Huntsman's

consent, reduced the verdict by $697.35, the value of the three-point hitch. From that judgment as modified, plus interest and attorney's fee, comes this appeal.

For reversal appellant first contends that the trial court erred in dismissing appellant's third-party complaint against appellee Allis-Chalmers. The third-party complaint against Allis-Chalmers, the manufacturer, alleged that the retailer Huntsman and Steve Travis, a field representative of the manufacturer, sold the farm tractor to appellant and represented to him that it was a new demonstrator with less than 150 hours of use; that it was not a new demonstrator which was known to the manufacturer's agent; that the tractor did not conform to the contract because it was delivered without a "three-point hitch" and the manufacturer's agent knew that a three-point hitch was required; and that the tractor had been used excessively. In his third-party complaint, the appellant sought damages for the difference between the contract price and the actual market value of the tractor and, also, for damages resulting from the non-delivery of the three-point hitch which allegedly caused a late planting and, therefore, a diminished soybean yield for the 1968 crop. It is appellant's contention "that the pleadings and the proof, when viewed in the light most favorable to appellant, was sufficient to create a question for the jury on two allegations of the third-party complaint [1] whether the tractor was a new demonstrator as represented and [2] whether the tractor conformed to the contract when it was delivered minus the three-point hitch."

In our view the evidence appears undisputed that the manufacturer was not a party to the contract originally or by ratification. The terms of the contract were verbally agreed upon between Huntsman, the seller, and appellant, the buyer, after negotiations between them and inspection of the tractor by appellant. A few days later Huntsman and appellant signed the written contract. Travis, the manufacturer's agent, merely witnessed their signatures and assisted in computing the balance due and, after credits, the annual payments and then filled in these items. (Appellant says that the balance due

was left blank and should be $8,250 rather than $9,250.) Appellant admits that he had never met this agent until the date appellant signed the contract. Also, the agent nor any other representative of the manufacturer ever made any representations to him concerning the quality or condition of the tractor or with respect to whether the tractor conformed to the contract upon delivery without the three-point hitch. When we consider this evidence in the light most favorable to the appellant, no factual issue existed for the jury's consideration as to the manufacturer being a party to this contract; therefore, the trial court properly directed a verdict. *Cowart, Adm'x v. Jones, Contractor,* 250 Ark. 881, 467 S.W.2d 710 (1971). Furthermore, appellant admits that he knew it was a demonstrator and that the manufacturer had fully performed a one-year warranty with respect to his complaints. The one-year warranty was customary in the sale of a new demonstrator tractor.

Appellant next contends that the trial court erred in directing a verdict for appellee Huntsman on appellant's counter-claim. The contract provided that Huntsman, the seller, would order and deliver a "3 point hitch" which was to be used on the tractor in planting his soybean crop. Appellant makes the argument that the failure of Huntsman to deliver the three-point hitch resulted in consequential damages, i.e., a decrease and loss in appellant's soybean production. According to appellant, the offer of delivery by Huntsman of the three-point hitch occurred too late for use in soybean planting. It is appellant's assertion "that the proper measure of damage for diminished yield or diminished quality is the value of the difference in yield or quality where the entire farm was cultivated, planted and harvested as it was done here." In support of this asserted basis for consequential damages, appellant adduced evidence as to the soybean production on a 600 acre tract in 1967 in contrast to a lesser yield on this same 600 acres, plus an adjoining 100 acres, in 1968, which is the year in question. In other words, there was testimony that the yield on the smaller acreage for the previous year was greater. The support price for soybeans was $2.50 per bushel for each year.

Appellant agrees that our pre-Uniform Commercial Code cases hold that the measure of damages as to growing crops must include consideration for the difference between the cost of producing and gathering a full crop and the crop which was actually produced. *St. Louis Southwestern Ry. Co.* v. *Morris,* 76 Ark. 543, 89 S.W. 846 (1905). However, the appellant persuasively argues that our UCC, Ark. Stats. Ann. § 85-2-714 and 715 (1961 Add.) and Comment 4 with the latter section, clearly provides for a liberal administration of remedies. Comment 4 "***rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances." However, consequential damages, or anticipated profits such as the diminished crop yield as alleged in the case at bar, cannot be recovered unless the evidence establishes the alleged damages with reasonable certainty. *Reed* v. *Williams,* 247 Ark. 314, 445 S.W.2d 90 (1969).

In the case at bar when we view the evidence most favorably to the appellant, the proof was insufficient to take the question of anticipated profits or consequential damages out of the realm of speculation and conjecture and would present to the jury an incomplete set of figures as to anticipated profits. Therefore, the trial court properly refused appellant's instruction on this issue and correctly directed a verdict for Huntsman upon appellant's counter-claim for consequential damages.

Appellant next asserts for reversal that the modification of the verdict after discharge of the jury was erroneous and prejudicial. The jury found that the appellant owed $9,250. In its verdict, the jury directed "delivery of the hitch" to the appellant. The cost of the hitch was $697.35. The hitch was included as an item in the total sale price of the tractor in the written contract. Huntsman had offered to deliver the hitch after he acquired it. The trial court, with Huntsman's consent, modified the $9,250 judgment by deducting $697.35. Appellant contends that the trial court exceeded its authority. Appellant acknowledges that the trial court has

plenary power to determine the jury's intention when it can be fairly interpreted. *Sledge & Norfleet Co.* v. *Mann*, 166 Ark. 358, 266 S.W. 264 (1924), *Reynolds* v. *Nutt*, 217 Ark. 543, 239 S.W.2d 949 (1950). When the jury's intention is obvious and manifest and is incorrectly expressed, under a mistake of law and not of fact, it is proper for the court to amend the verdict in order that it conforms to the jury's intention. In other words, when the jury's intention can be ascertained with certainty, the trial court is accorded the power and authority to modify the verdict. *Trailmobile* v. *Robinson*, 227 Ark. 915, 302 S.W. 2d 786 (1957), *Neal* v. *Peevey*, 39 Ark. 337, App. & E. 231 (9) (1882). In the case at bar, we find no error in the court amending the verdict to conform to the obvious and certain intention of the jury.

The appellant next contends for reversal that the court erred in providing in the judgment a lien on the tractor in favor of Huntsman. The judgment directed that the tractor be sold to the highest bidder and the proceeds applied to the judgment. Appellant contends there is no authority for a court of law to declare a lien on personalty. Even so, here the error is harmless, since the seller's asserted lien, based upon retention of title as provided for in the written sale contract, can be enforced by further proceedings pursuant to Ark. Stat. Ann. § 34-2301 (1962 Repl.). To that extent the judgment is modified.

Affirmed as modified.