Jimmy ISBELL d/b/a Isbell & Son *v.* ED BALL
CONSTRUCTION CO., Inc., and Commercial Union
Insurance Company

91-317                                    833 S.W.2d 370

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Larry J. Steele*, for appellant.

*Henry, Walden, Davis & Halsey*, by: *Troy Henry*, for appellees.

DAVID NEWBERN, Justice. This is a contract case which was appealed to this Court as one involving statutory interpretation. Rule 29.1.c. We have retained the case for decision although we find no need to interpret a statute.

The appellant, Jimmy Isbell, sued the appellees, Ed Ball Construction Co., Inc., and Commercial Union Insurance Co. for breach of contract. The jury verdict favored the appellees. Isbell contends the Trial Court erred in granting, in part, a motion *in limine* by which Isbell was prevented from introducing into evidence a separate contract between the parties. He also contends he should have been granted a new trial because the verdict was against the preponderance of the evidence. We hold that the evidence was sufficient and no reversible error occurred.

Isbell hauls dirt and gravel for a living. He has worked in that business 30 years and had worked with Ed Ball and appellee Ed Ball Construction Company under oral agreements on several projects prior to March 4, 1988. On that date they entered their first written contract. Isbell agreed to load, haul, and deliver dirt to the site of an Arkansas Highway Department (AHD) road project which had been awarded to Ball as general contractor. The contract stated Isbell would be paid "$1.53 per yard" and that the hauling was to be done according to AHD specifications. The relevant AHD specification clearly states that measurement is to be by cross section yard.

Isbell asserted the contract term "per yard" meant he was to

be paid per "truck load yard." Ball asserted the term meant "cross section yard" and made a motion *in limine* to prevent any testimony about truck load yards on the ground that the contract was specific and clear and thus the parol evidence rule applied. The motion was denied except that the Court prohibited Isbell from introducing testimony about a second contract between the parties. The second contract involved a different project, and it specified measurement to be by cross section yard. Isbell wanted to introduce that later contract to show that, had the first contract meant cross section yard, it would have spelled it out other than using the term "per yard" with reference to the AHD specifications.

Testimony established that in the dirt hauling business two methods of measuring the amount of material moved are commonly used. The truck load yard method requires that trucks used to haul dirt be measured to establish the volume they will hold and checked each time a load is delivered. The person doing the checking, called a "spotter," issues a ticket to the driver of the truck if the load is acceptable. A copy of the ticket for each truck load remains with the spotter and is delivered to the job foreman. These copies are compared and reconciled in the business office with those retained by the hauler. The hauler is paid for the actual volume delivered.

Using the cross section yard method, the site from which the dirt is taken is surveyed and marked establishing the cross section which will be the pit. The hauler loads from the pit and the AHD job supervisor periodically measures the pit or estimates the amount of dirt removed based on projections set out in the bid. Haulers are paid based on these estimates with generally 90% of the estimated cost being advanced over the life of the job. At the end of the project the pit is again measured and the actual volume of dirt removed less a shrinkage factor forms the basis for payment to the hauler.

When dirt is removed it is less compact than it was, thus a truck load yard contains less dirt than a cross section yard. A hauler must make more trips to move the same amount of dirt if the cross section method of measurement is used than he would make if the truck load yard method is used.

Isbell testified he informed Ball he could not accept the job at

$1.53 per cross section yard, and they agreed to the truck load yard system of measurement. Ball testified he clearly informed Isbell that the hauling was to be measured by cross section yard. At the end of the project AHD paid Ball $158,852 for dirt taken from the pit. Isbell was paid $127,387 but claimed that he had hauled 128,033 yards and was owed another $69,665.49 based on his own truck load measurements. Isbell also argued that the AHD had shorted them on measurement of the pit as the result of a surveying error.

Testimony established that there was no spotter and measurements of trucks were not taken on the job, nor were tickets issued to the drivers when hauling began. These omissions showed the truck load yard method was not being used. Isbell kept track of the number of truck loads hauled and kept his own estimates of truck load yardage. He turned these estimates in to the AHD supervisor until he refused to accept them. When Isbell became dissatisfied with the estimates of the AHD supervisor he borrowed equipment from Ball and surveyed the pit himself, first in December of 1988 and then again in June of 1989. Each time the result was substantially similar to the AHD estimate, and after each of these surveys Isbell continued to work on the project and accept payment per the estimates. At the conclusion of the project, however, he billed Ball for his truck load yards.

### 1. Motion In Limine

Ball's motion *in limine* argued that the attempt to use the contract signed approximately 60 days after the one at issue and to present parol evidence concerning the meaning of the term "per yard" represented an impermissible effort to vary the express terms of the first contract, which he characterized as unambiguous.

The contract was not ambiguous. The relevant part is as follows:

> Isbill and Son, Hauling agree to Load, Haul and Deliver dirt Located at approx. station 185 + 00 — on property belonging to Mr. Jim Seay. This Dirt will be delivered to the Job Site, in Clay County. The price will be $1.53 per yard. Hauling to be done according to Arkansas Highway Dept. specifications.

The AHD specification for the method of measurement provides in relevant part:

> 10.11 Method of Measurement. (a) All accepted excavation and borrow will be measured in its original position by the cross section method, either by conventional or photogrammetric procedures, and computed by the average and area method to ascertain the amount of material removed, which measurement will include over breakage or slides not attributable to carelessness . . . .

██ When a written contract refers to another instrument and makes the terms of that instrument a part of the contract, the two are construed together as the agreement of the parties. *International Graphics, Inc.* v. *Bryant*, 252 Ark. 1297, 482 S.W.2d 820 (1972). Given the clarity of the specification, there was no need for parol evidence. Only when ambiguity exists and the meaning of a contact becomes a question of fact is parol evidence admissible. *C. & A. Construction Company, Inc.* v. *Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1971).

█ Although the Court erred in denying part of Ball's motion *in limine* and admitting testimony which sought to vary the language of the contract the jury reached the correct result finding the contract to specify payment by the cross section method.

## 2. New trial

█ On review of a trial court's denial of a motion for new trial the question is whether the verdict is supported by any substantial evidence. *Harper* v. *Clark Equip. Co.*, 300 Ark. 413, 779 S.W.2d 175 (1989). Evidence favorable to the appellee is given the benefit of all reasonable inferences permissible under the proof. *Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988).

The literal content of the contract was undisputed. As we hold it unambiguous, we need go no further.

Affirmed.