P.A.M. TRANSPORT, INC. *v.* ARKANSAS BLUE CROSS AND BLUE SHIELD

93-59                                        868 S.W.2d 33

Supreme Court of Arkansas
Opinion delivered December 6, 1993
[Supplemental Opinion on Denial of Rehearing
January 10, 1994*]

* Hays and Brown, JJ., would grant rehearing.

236

*Jones, Hixson & Jones*, by: *Kenneth S. Hixson*, for appellant.

*Matthews, Campbell & Rhoads, P.A.*, by: *George R. Rhoads* and *David R. Matthews*, for appellee.

DAVID NEWBERN, Justice. This is an insurance contract case. The appellant, P.A.M. Transport, Inc. (PAM), entered a contract with the appellee, Arkansas Blue Cross and Blue Shield (BCBS), which provided that BCBS would administer the health care claims of PAM employees. BCBS was to adjust and then pay all claims submitted by PAM employees. BCBS would then bill PAM, monthly, for reimbursement of the claims plus an administrative fee. The agreement provided PAM's annual liability for insurance claims would not exceed a "cap." The cap was calculated using a formula based on the number of employees insured under the plan. BCBS adjusted and paid all claims, but PAM was to reimburse BCBS only up to the cap amount. Claims in excess of the cap amount were to be absorbed by BCBS. Within sixty days after the contract year, BCBS provided PAM with an accounting of insurance claims for that year. If the accounting showed that PAM's monthly reimbursements to BCBS exceeded the cap for the year, BCBS would reimburse PAM that amount.

At the end of the 1988-89 contract year, a dispute arose as to how the cap was calculated. Officials at PAM believed payments to BCBS for the 1988-89 year had exceeded the cap by several thousand dollars. By BCBS's calculations, these payments had not reached the cap amount. The dispute extended into the 1989-90 contract year. Toward the end of the 1989-90 contract year, PAM believed it was being overbilled again. It decided that when its monthly payments approached the cap, as PAM calculated the cap, PAM would cease reimbursing BCBS. As a result of that action, PAM's account became delinquent according to BCBS, and in May, 1990, BCBS suspended payment on claims submitted by PAM employees.

PAM sued BCBS for breach of contract and deceit. PAM claimed BCBS had miscalculated the cap for contract years 1988-89 and 1989-90 and thus PAM was entitled to a reimbursement for each of those contract years. Additionally, PAM claimed BCBS had induced PAM to enter the contracts by misrepresenting the manner in which BCBS intended to calculate the liability cap. BCBS counterclaimed for the unpaid invoices in contract year 1989-90.

The jury found that BCBS had indeed overbilled PAM $201,099.50 for the contract year 1988-89. It also determined BCBS liable for deceit damages of $400,000. For the 1989-90 contract year, the jury returned a $94,271.24 verdict in favor of PAM, and a $282,187.98 verdict in favor of BCBS. The Trial Court set aside the deceit verdict, stating there was not substantial evidence to support it and that it was inconsistent with the contract awards in favor of PAM. Judgment was entered on the other two verdict awards favoring PAM and the one favoring BCBS.

PAM has raised five points of appeal, and BCBS argues six points in its cross-appeal. We find no reversible error.

PAM and BCBS signed a new contract each contract year beginning in late May or early June. Each contract contained a clause describing the cap. The clauses were identical with the exception of changes in the cap amount and number of PAM employees to be insured. For example, the clause in the contract entered June 1, 1988, for the 1988-1989 year stated:

> MAXIMUM LIABILITY: The maximum liability is $1,208,457.00 based on 901 certificates. If actual exposure exceeds these amounts, the maximum liability will be adjusted at the end of the policy year using $111.77 per certificate. A settlement will be computed sixty days after the end of the policy year. In the event that paid claims plus administrative expenses exceed the maximum liability, carrier is liable for the excess.

Each of PAM's employees was issued an insurance certificate by BCBS. The number of certificates stated (901) was BCBS's projection of the number of PAM employees through the contract year. The maximum liability cap ($1,208,457.00) was the product of the number of certificates times the cost figure contained in the clause ($111.77) and the number of months the contract was in effect (12).

The dispute that arose between PAM and BCBS concerned the number of certificates used in calculating the cap. It was PAM's understanding that the number of certificates used to calculate the cap was to be based on the actual number of PAM employees. Based on that interpretation, the liability cap could fluctuate up or down from the cap stated in the liability clause.

According to BCBS's interpretation, the liability cap was calculated based on the minimum number of certificates that was found in the liability clause. According to BCBS, the cap could only adjust upward.

PAM presented evidence that BCBS representatives stated the liability cap would fluctuate up or down. PAM based its calculation of each annual cap on the understanding it claimed to have been induced by those representations.

BCBS rebutted this evidence with testimony of its representatives that those comments were made while PAM was in an "expansion growth mode." The BCBS representatives believed, at the time the statements were made, the actual number of PAM employees during a contract year would always be higher than the projected figure that was placed in the maximum liability clause. In that context the liability cap would fluctuate up and down between contract years. As it turned out PAM's number of employees decreased during the years it contracted with BCBS. That is evident from the contracts in dispute. In 1988-89, the projected number of certificates used in the liability cap clause was 901, and the same figure for the 1989-90 clause was 783.

### Appeal

### 1. The deceit verdict

PAM introduced testimony of its employees and some BCBS employees to the effect that, during negotiation of the agreement, BCBS personnel had stated that PAM's liability in any given contract year could decrease below the "maximum liability" stated in the contract if the number of PAM employees decreased. PAM contended that was a misrepresentation made to induce it to enter the agreement, and it suffered damages accordingly. In its first two points of appeal, PAM argues the jury's award of damages for deceit was not inconsistent with its recovery on the contract as it was injured in excess of its contract recovery, and thus it was improper to have set the verdict aside.

In each of the breach of contract verdicts favoring PAM, the jury awarded damages to PAM calculating the liability cap for each contract based on PAM's interpretation of the maximum liability clause. The Trial Court set aside the deceit verdict, hold-

ing that, as the jury had determined that the contract was as PAM had interpreted it to be, there was no misrepresentation. Although it is somewhat inverted, we find no fault with the Trial Court's logic, but in addition we choose to state a different rationale for our agreement with the result reached.

One of the elements of deceit is that the misrepresentation alleged must typically be a misrepresentation of fact. *Delta School of Commerce, Inc.* v. *Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989). In the context of negotiating a contract, a misrepresentation sufficient to form the basis of a deceit action may be made by one prospective party to another and must relate to a past event, or a present circumstance, but not a future event. "An assertion limited to a future event may be a promise that imposes liability for breach of contract or a mere prediction that does not, but it is not a misrepresentation as to that event." 1 E. Allen Farnsworth, *Farnsworth on Contracts* §4.11 (1990); *see also, Delta School of Commerce, supra* (citing *Anthony* v. *First National Bank of Magnolia*, 244 Ark. 1015, 431 S.W.2d 267 (1968); *Lawrence* v. *Mahoney*, 145 Ark. 310, 225 S.W. 340 (1920); *Harriage* v. *Daley*, 121 Ark. 33, 180 S.W. 333 (1915); and *Conoway* v. *Newman*, 91 Ark. 324, 121 S.W. 353 (1909)).

The representations in question illustrated BCBS's interpretation of the liability cap. Since these representations were made before any contract was signed, they could not have represented a past event or present circumstance. These representations could only have alluded to BCBS's future performance of contracts to be executed in the future. In these circumstances, the Trial Court was correct to set aside the deceit verdict.

## 2. Inconsistent verdicts

PAM contends the breach of contract verdict favoring BCBS awarded by the jury is inconsistent with the ones favoring PAM. In its first breach of contract verdict, the jury awarded PAM $201,099.50 for BCBS's breach of the 1988-89 contract. The second breach of contract verdict is divided into two portions. In the first portion, the jury awarded PAM $94,271.24 for BCBS's breach of the 1989-90 contract; in the second portion the jury awarded BCBS $282,187.98 for PAM's breach of the 1989-90 contract. PAM contends it was impossible for the jury to return

the award to BCBS based on the calculations used to determine the damages awarded to PAM. To understand PAM's argument requires careful analysis of each verdict.

At trial PAM presented calculations to show it was over-billed for the 1988-89 contract. The 1988-89 contract contained a liability cap of $1,208,457.00. According to PAM's interpretation of the contract, its maximum liability was $1,079,027.58, based on the actual number of PAM employees. PAM's monthly payments to BCBS for 1988-89 totalled $1,208,457.24. Using PAM's liability cap, PAM claimed it was overbilled $129,429.66. PAM was also entitled to a "large claim rebate" from BCBS in the amount of $71,669.84. This rebate was based on an agreement between BCBS and PAM in which BCBS insured PAM for any claims from a single employee that exceeded $50,000 during the contract year. All claims paid by BCBS were forwarded to PAM in its monthly invoices. At the end of the contract year, these large claims were calculated and returned to PAM in the form of a rebate. In sum, PAM claimed BCBS owed it $201,099.50. That was the exact amount of the jury's first verdict.

The verdict for the 1989-90 contract was somewhat different in that PAM owed BCBS for unpaid invoices. Throughout their dispute, PAM admitted it did not pay several invoices at the end of its 1989-90 contract with BCBS. PAM introduced evidence to show that it owed BCBS $139,683.08. This figure was calculated using the same process PAM used in determining the damages it was awarded in the first verdict.

The 1989-90 contract contained a maximum liability figure of $1,329,910.00. According to PAM, the actual maximum liability for 1989-90 was $1,161,477.24. PAM's payments to BCBS for that year totalled $1,021,794.16. The difference between the latter figures represents the $139,683.08 that PAM contends it owed BCBS. However PAM also presented evidence that it was entitled to a $233,954.32 "large claim rebate" from BCBS. Deducting the amount PAM owed BCBS from the rebate left a net due to PAM of $94,271.24. That was the exact amount of the first portion of the jury's second verdict.

BCBS presented evidence that PAM's unpaid invoices for

1989-90 totalled $282,187.98. That included the $233,954.32 rebate PAM was entitled to. The figure was based on BCBS's interpretation of the contract which set PAM's liability for the 1989-90 contract year at $1,329,910.00. The second portion of the jury's second verdict awarded BCBS the $282,187.98 it claimed it was due.

PAM did not object to the verdict before the jury was discharged but filed a post-trial motion to modify the verdict. The Trial Judge denied the motion. PAM argues that the jury obviously agreed with the PAM position on how the contract was to be interpreted, and thus for it to have awarded the $282,187.98 on the basis of the contrary BCBS interpretation was inconsistent and should be reversed and remanded to the Trial Court.

PAM also alleges BCBS miscalculated its damages. PAM claims that the $282,187.98 sought by BCBS represents BCBS's unpaid invoices, together with interest and late penalties, without taking into account any liability cap. That contention is incorrect. A review of BCBS's invoices shows that BCBS billed PAM each month subject to a monthly liability cap, which was 1/12 of the liability cap stated in the contract.

By returning both portions of its second breach of contract verdict, the jury in essence endorsed each party's theory with respect to how the liability cap was to be calculated. In overruling PAM's post-trial motion, the Trial Court stated the jury apparently intended to do so. If that is so, the verdicts were inconsistent.

The time to object to an irregularity or inconsistency in a verdict is prior to the discharge of the jury. *Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Center* v. *Johnson*, 295 Ark. 522, 750 S.W.2d 396 (1988). The purpose of this rule is to allow the Trial Court to resubmit an inconsistent verdict to the jury and attempt to correct discrepancies.

For its proposition that the Trial Court erred in overruling its post-trial motion, PAM cites *Traylor* v. *Huntsman & Allis Chalmers*, 253 Ark. 704, 488 S.W.2d 30 (1972). In that case, the Trial Court did render a judgment different from the jury verdict, and we held it was proper, stating:

When the jury's intention is obvious and manifest and is incorrectly expressed, under a mistake of law and not of fact, it is proper for the court to amend the verdict in order that it conforms to the jury's intention. In other words, when the jury's intention can be ascertained with certainty, the trial court is accorded the power and authority to modify the verdict. *Trailmobile* v. *Robinson*, 227 Ark. 915, 302 S.W.2d 786 (1957); *Neal* v. *Peevey*, 39 Ark. 337 (1882).

If we were to extend the *Traylor* case here, we would hold that, in these circumstances, it was error for the Trial Court *not* to have disregarded a part of the jury's verdict. We would have to do so on the conclusion that the Trial Court should have been aware of the jury's "obvious and manifest" intention.

It is possible to conclude that the jury intended to use PAM's interpretation of the liability cap. That could be deduced from the two verdicts awarding PAM damages based on PAM's interpretation. Yet it is clear, from the inconsistent verdicts, that the evidence each side presented was complex and confusing. The Trial Court concluded that the evidence supported the verdicts. That conclusion did nothing to resolve the inconsistency; however, it highlighted the complexity of the evidence presented to the jury and the Trial Court's inability to say what the "obvious and manifest" intention of the jury was. The problem is one which could have, and should have, been resolved by the jury. In these circumstances, the case should not be retried, and we will apply our rule that an objection should have been made while the jury remained available to cure the inconsistency.

### 3. Partial summary judgment

PAM claimed that under the contract BCBS was responsible for paying claims in the year they were generated and that, in determining PAM's "maximum liability," PAM should have received credit for payments made by BCBS in subsequent contract years. For example, if PAM's liability for 1988-89 had been $1,000,000, and $1,200,000 in insurance claims were incurred by PAM employees in that year, BCBS would be liable to pay the excess $200,000 despite the fact that the claims might

not have been processed or actually paid by BCBS until the 1989-90 contract year.

BCBS was granted a partial summary judgment to the effect the liability cap for each year was based on claims that had been paid by BCBS for that year, rather than the claims incurred by PAM employees for that year. The holding was based solely on the contract. The judge found that the contracts, with respect to this point, were unambiguous.

The ruling was correct. All of the agreements of the parties referred to "paid" claims. No references were made to "incurred claims" in the context of assignment of liability. There was no ambiguity with respect to that portion of the contract.

### 4. Attorney's fees

PAM contends it is entitled to attorneys' fees pursuant to Ark. Code Ann. § 23-79-208(a) and (b) (Repl. 1992). The Statute provides, in part:

> (a) In all cases where loss occurs and the [insurer] . . . liable therefor shall fail to pay the losses within the time specified in the policy, after demand made therefor, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss.

The Statute does not apply to this case. The contract between PAM and BCBS was a contract to provide insurance coverage to PAM employees, not to PAM. PAM employees were the policy holders of whatever policies existed under this agreement. Moreover, the basis of PAM's lawsuit against BCBS was breach of contract because BCBS overcharged PAM for insurance claims *paid by BCBS.*

Under Ark. Code Ann. § 16-22-308 (Supp. 1993), the prevailing party, in a breach of contract action, may request reasonable attorneys' fees and a Trial Court may award fees at its discretion. PAM alternatively requested attorneys' fees pursuant to the Statute. The Trial Court denied this request. We cannot say that the Trial Court abused its discretion.

*Cross-appeal*

*1. Parol evidence*

BCBS has two parol evidence arguments. First, it contends the Trial Court erroneously allowed parol evidence to be introduced by PAM, despite having found the contract unambiguous, and gave an instruction permitting the jury to interpret the contract despite that finding. Second, BCBS argues the Trial Court erred in refusing to admit parol evidence proffered by BCBS to interpret the contract.

As noted above, the Trial Court found the contract was unambiguous only as to one particular aspect, that is, the question whether PAM's annual liability was determined based on claims incurred or claims paid by BCBS for that contract year. The parol evidence introduced by PAM went to interpretation of the clause containing the "maximum liability" language.

That language is ambiguous. Parol evidence may be introduced to assist the fact finder to determine the intent of parties to a contract. *Minerva Enterprises, Inc.* v. *Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993); *Isbell* v. *Ed Ball Construction Co.*, 310 Ark. 81, 833 S.W.2d 370 (1992); *First National Bank of Crossett* v. *Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992), *cert. denied*, 122 L.E.2d 673 (1993). If PAM's liability was not to dip below the figure named as the "maximum," then the use of that term made the clause questionable. If the term "minimum liability" had been used it would have been clear that PAM was obligated to pay no less than the figure stated in the contract. We note that in the testimony of Steven Daugherty who claimed to have developed the language used, and whose testimony is discussed below, he referred to a "minimum maximum liability" clause.

In both contracts, the fact that the "maximum liability" was stated as a dollar amount, combined with the fact that the amount was calculated based on a number of certificates issued times a dollar figure created doubt as to the parties' intent. It was proper to admit parol evidence with respect to that issue. That is especially true as the evidence also went to proof of the deceit claim which was before the jury as well.

. The Trial Court's refusal to admit the parol evidence offered by BCBS is more troublesome. In its case in chief, BCBS offered testimony of Mr. Daugherty, who was manager of BCBS's actuarial division from 1986-1990. Mr. Daugherty was asked whether the "maximum liability" clause was standard in all BCBS insurance contracts of the "cost plus" type being considered here. PAM objected on the basis of relevancy, and the objection was sustained. That was followed by a proffer to the effect that Mr. Daugherty would have testified the clause is the same as is used in the insurance industry standard form.

Whether evidence is relevant is a discretionary determination made by a trial judge. *Rich Mountain Elec. Coop. v. Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992). The relevancy of the proffered testimony of Mr. Daugherty is questionable. In the supplemental abstract of BCBS, it appears that Mr. Daugherty testified he developed the language in the "maximum liability" clause in BCBS's contracts with PAM. Although he was allowed to allude to the fact that BCBS has some 50 to 60 such contracts operating in Arkansas, PAM's abstract shows that he was not allowed to testify about the contract clause he developed being included in many contracts other than PAM's.

Arkansas R. Evid. 406 was not mentioned to the Trial Court as a basis for admitting the testimony of Mr. Daugherty, but the argument on appeal is that this evidence should have been admitted to establish "routine practice of an organization" as permitted by the Rule.

While the clause may or may not be used routinely, there is no showing that Mr. Daugherty would have testified that in every contract in which it is included it is interpreted the same way. We cannot say the Trial Court abused its discretion in excluding the proffered testimony.

BCBS also offered testimony by Eula Douglas who would, according to the proffer of her testimony as abstracted, have said she has a similar contract with BCBS for her small business and that, while her number of employees varies, her "maximum liability" remains the same. Nothing was proffered to show that her number of certificates dipped below the

number stated in her contract as the basis of the calculation of the "maximum liability." The proffer was insufficient to establish clear relevancy of Ms. Douglas's testimony, and we cannot say the Trial Court erred in rejecting it.

### 2. Fiduciary relationship instructions

BCBS argues the Trial Court erred in giving two instructions which would permit the jury to conclude that BCBS stood in a fiduciary relationship with PAM. In view of letters introduced into evidence in which BCBS clearly referred to its role as a fiduciary, we find no error.

### 3. Form letter evidence

PAM offered evidence that its employees received objectionable termination of coverage notices from BCBS. BCBS offered into evidence a form letter which it typically sent to relay such a notice. It was rejected by the Trial Court upon an irrelevancy objection by PAM.

During the trial, BCBS's attorney attempted to lay the foundation for the introduction of this letter with the testimony of Steve Daugherty. Mr. Daugherty was unable to say that the letter being offered in evidence was one sent to PAM employees. He testified the letter was exemplary of one sent to persons whose claims were being suspended. He testified, on voir dire, that he was not sure the form letter was the letter which was sent to PAM's employees. The Trial Court ruled that this foundation was insufficient. Again, we cannot hold that the Trial Court abused its discretion in rejecting this evidence.

### 4. Attorney's fees for BCBS

BCBS does not contend it was entitled to an attorney's fee or that the Trial Court abused its discretion in refusing to award the fees it requested pursuant to Ark. Code Ann. § 16-22-308 (Supp. 1993). The only argument presented is that it would be unfair if PAM were given an attorney's fee award on its breach of contract action.

In view of the fact that no such fee is being awarded to PAM, we need not discuss the point further.

Affirmed on appeal and on cross-appeal.

HAYS AND BROWN, JJ., concur in part and dissent in part.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part. The net result of the majority's decision is to affirm post-trial relief in favor of BCBS in the amount of $400,000 and to deny PAM similar relief in the amount of $282,187.98, even though neither party objected to the verdicts while the jury was empaneled. I cannot rationalize this discrepancy in treatment under these facts.

The verdicts and awards for the respective recipients by year were:

| 1988/89 | PAM | Breach of Contract $ 201,099.50 |
|---|---|---|
| 1989/90 | PAM | Breach of Contract $ 94,271.24 |
| 1989/90 | BCBS | Breach of Contract $ 282,187.98 |
| (no year specified) | PAM | Tort of Deceit $ 400,000.00 |

In sum, the jury awarded PAM a total recovery of $694,370.74 and BCBS $282,187.98. PAM's net award, therefore, was $412,182.76.

Ten days after the verdicts, BCBS filed a motion stating that PAM could not recover in both contract and tort. Accordingly, BCBS called for PAM to elect between its tort award and its recovery in contract. Ten days following BCBS's motion to elect, PAM filed a motion to modify BCBS's award for the 1989/90 contract year. PAM's argument was that this award could not be reconciled with awarding damages to PAM for breach of contract for the two years in controversy.

In its judgment, the trial court found as follows regarding the two post-trial motions:

3. That the verdicts for the Plaintiff on breach of contract and on the tort of deceit are *inconsistent* because in order for the Plaintiff to recover on breach of contract, the

maximum liability provision of the contract had to be interpreted as contended by the Plaintiff, and if the maximum liability provision of the contract were interpreted as contended by the Plaintiff, then the Plaintiff was not fraudulently induced to enter into a contract different than what it understood the contract to be. Since the Plaintiff has affirmed the contract by receiving benefits under it and being awarded damages for the breach of it, the recovery of additional damages for the tort of deceit is inconsistent therewith; so the Plaintiff's verdict for the tort of deceit should be set aside.

4. That the verdict in favor of the Defendant for breach of contract is *consistent* with the evidence because even the Plaintiff admitted it breached the contract, and the Defendant introduced evidence as to the amount of its damages for breach of contract, which amount was the amount awarded by the jury; so the verdict in favor of the Defendant for breach of contract should not be set aside. (Emphasis added.)

Hence, the court found that the verdicts in PAM's favor for breach of contract and tort were "inconsistent," though no motion to that effect had been made by BCBS before the jury was discharged. The court went on to say that BCBS's verdict for 1989/90 in the amount of $282,187.98 for breach of contract was "consistent" with the evidence, and it allowed that verdict to stand.

The majority opinion discards the circuit court's analysis and findings, though it does affirm the result reached by the court. First, it agrees with the court's conclusion that recovery in both tort and contract by PAM was double recovery, or inconsistent as the circuit court put it, but in doing so, the majority fails to address BCBS's failure to object before the jury was dismissed. The opinion then proceeds to reverse the trial court's finding that the 1989/90 recoveries in favor of BCBS and PAM were consistent. The majority finds, on the contrary, that these verdicts were inconsistent and holds that PAM is procedurally barred from raising the inconsistency on appeal because it failed to object to the inconsistent verdicts while the jury was still empaneled. The effect of the majority's decision is to reduce PAM's total award from $412,182.76 to $12,182.76.

Clearly, the majority's disparate analysis of the two post-trial motions cannot be meshed or made compatible. Either objections asserting inconsistent verdicts must be made before the jury is dismissed or not. PAM should not be penalized for what BCBS also failed to do. In short, both parties must be treated the same. Here, it is obvious that PAM was content with the verdicts which netted it $412,182.76 until BCBS called them into question. At the very least, after BCBS sought to unravel the verdicts, PAM should be accorded the right to raise its own theory of inconsistency.

I would reverse the trial court's decision on the dual contract awards for 1989/90, and strike the award of $282,187.98 in favor of BCBS. Admittedly, our decisions hold that an objection to inconsistent verdicts must be made before the jury is dismissed. *See, e.g., Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). Ordinarily that is true. But in a case of this complexity involving several theories of recovery for multiple years and a counterclaim to boot it is unduly harsh and somewhat unrealistic to hold the jury at bay and require the lawyers to sift through the various verdicts searching for an inconsistency before the jury is dismissed. And, again, PAM was undoubtedly satisfied with the verdicts until BCBS called them into question and should not be sanctioned for a failure to object under such circumstances.

It is a dangerous business to tinker with jury verdicts. But when one enters into such uncertain territory, it cannot be for the benefit of only one party, particularly when both parties have advanced along the same course procedurally.

While agreeing with the results reached on the other issues, I respectfully dissent on this point.

HAYS, J., joins.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JANUARY 10, 1994

Petition for Rehearing; denied.

*Kenneth S. Hixon*, for appellant.

*Matthews, Cambell & Rhoads, P.A.*, by: *George R. Rhoads* and *David R. Matthews*, for appellee.

PER CURIAM. The appellant in this case, P.A.M. Trucking (PAM), requests a rehearing based on several alleged mistakes of fact and law in our original opinion. We deny this petition, but write this supplement to clarify a portion of our opinion.

Our opinion contains the following paragraph:

> PAM also alleges BCBS [Blue Cross Blue Shield] miscalculated its damages. PAM claims that the $282,187.98 sought by BCBS represents BCBS's unpaid invoices, together with interest and late penalties, without taking into consideration any liability cap. That contention is incorrect. A review of BCBS's invoices shows that BCBS billed PAM each month subject to a monthly liability cap, which was 1/12 of the liability cap stated in the contract.

This paragraph is technically incorrect. BCBS paid insurance claims of PAM's employees, and billed PAM for these claims in monthly invoices. To levelize PAM's payments, in any month the invoice exceeded 1/12 of the contracted liability cap, BCBS deducted the excess from the invoice. This deduction was then carried over to the next month in which PAM's invoice was less than 1/12 of the liability cap. The effect of this procedure was to keep PAM's monthly insurance bill below a specified amount, and to attempt to keep PAM's annual payments as close to the

contracted liability cap, as BCBS calculated it, as possible. Our opinion incorrectly implies that in any month PAM's invoice exceeded 1/12 of the liability cap, BCBS absorbed the excess.

■ This correction does not disturb the holding in our opinion. BCBS received a jury verdict based on the records they presented in court. This award was inconsistent with the jury verdicts returned in PAM's favor. PAM failed to object to this award until after the jury was dismissed. As we held in the opinion, the proper time to object to a jury verdict is while the jury is still available to cure an inconsistency.

HAYS and BROWN, JJ., would grant rehearing.