# FORD MOTOR COMPANY
### *v.* Donald NUCKOLLS and Betty Nuckolls

94-370                                                894 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered March 20, 1995

*Davis, Cox & Wright*, by: *Paul H. Taylor*; and *McGuire, Woods, Battle & Boothe*, by: *Grace R. den Hartog* and *William H. King, Jr.*, for appellant.

*Daily, West Core, Coffman & Canfield*, by: *Stanley A. Leasure*, for appellees.

ROBERT H. DUDLEY, Justice. After hearing almost three weeks of testimony, the jury returned a verdict in favor of defendant Ford Motor Company in this products liability case. The defen-

dant's verdict was rendered at the close of the first part of a bifurcated trial, but it ended the trial because there was no need for the jury to hear the second part of the case, which was Ford Motor Company's cross-claim against other defendants for reimbursement under the Joint Tortfeasors Act. After the judgment was entered, the plaintiffs moved for a new trial. The trial judge granted a new trial on the ground that he made errors of law during the trial. We reverse and order the verdict reinstated because the trial judge did not make errors of law that materially affected plaintiffs' rights.

Plaintiff Donald Nuckolls, a roofer, was injured in a single-vehicle accident that occurred in 1990 on Highway 10 near Greenwood. He was driving a 1976 F-600 Ford truck, a fourteen-year-old truck, with a vertical lift bed, or scissors-up lift bed, mounted on the chassis. The lift bed was used both to reach roofs and to carry loads like an ordinary dump truck. The accident occurred when he was driving the truck at a speed of forty to forty-five miles per hour and the lift unexpectedly extended to its full height of about fourteen feet. The lift bed was loaded with almost six tons of roofing scrap. The truck became unstable with the large amount of weight lifted so high, and it began to skid. The truck turned over, and, as it came to rest, gasoline ignited. The gasoline came from the gasoline filler pipe that extended out of the side of the truck. Plaintiff escaped through the passenger door, but sustained burn injuries that required extended hospitalization and kept him from working for approximately nine months.

Plaintiffs, Donald Nuckolls and his wife Betty Nuckolls, sued Ford Motor Company, appellant, as the manufacturer of the truck, and also sued the following other defendants: Marion Metal Products Co. (Original Marion) as the manufacturer of the lift; Randall Ford, Inc. as the company that assembled and installed the lift; Truckstell Manufacturing Company, Inc. and A.B. Seimer, Inc. (Successor Marion) as purchasers of and successors to the Original Marion Company; Hansen-Dayton Corp. as a continuation of Original Marion; Sycon Corporation which merged with Successor Marion; and Marion Manufacturing Company which acquired some of the divisions of Sycon. Plaintiffs alleged that both the Ford truck and the vertical lift bed were defective products.

Plaintiffs pleaded that Ford was liable because of (1) negligent design of the fuel system and fuel tank; (2) failure to warn of an inherently dangerous condition in the fuel tank extension; (3) failure to install safety devices for the foreseeable danger to parties such as plaintiff; (4) failure to properly test for safety; and (5) failure to conduct adequate quality control. Plaintiffs did not sue plaintiff Donald Nuckolls's employer, the Dale Crampton Roofing Company.

Ford filed cross-complaints against the other defendants and alleged that the accident was caused by the unexpected activation of the lift bed and not from any defect in the Ford truck chassis. Ford asked that if it were found jointly and severally liable with any of the other defendants that the respective pro rata share of responsibility be submitted to the jury as under the Joint Tortfeasors Act.

Shortly before the trial began, plaintiffs settled with all of the defendants except Ford. This left the other defendants in the case as cross-defendants to Ford's claim for reimbursement from joint tortfeasors. The trial court ruled that the trial would be bifurcated. As a result, the other defendants did not actively proceed in the first part of the trial, the part that determined whether Ford was liable for plaintiffs' damages. Since the verdict from the first part of the trial was in favor of Ford, it was not necessary to hold the second part of the trial, the part that would have decided whether Ford was entitled to reimbursement from joint tortfeasors.

Plaintiffs filed a pretrial motion in which they sought to prevent Ford from introducing testimony that plaintiff Donald Nuckolls's employer, the Dale Crampton Roofing Company, had installed a locking device on another of its trucks with a similar bed lift soon after the accident. The trial court ruled that the evidence was admissible because it was a subsequent remedial measure by a third party rather than a defendant. At the conclusion of the presentation of evidence, the trial court, over plaintiffs' objection, instructed the jury to consider the fault of the codefendants when reaching the verdict.

Plaintiffs filed a motion for new trial, asserting that the court had erred in its interpretation of A.R.E. Rule 407, the rule involving subsequent remedial measures. They also argued that the

court should not have given instructions about the other defendants, because there was insufficient evidence of their fault. Finally, plaintiffs argued that the court should not have given a comparative fault instruction to the jury, as there was insufficient evidence of the fault of the other defendants.

The trial judge determined that he had made a mistake in ruling that the subsequent remedial measure evidence by a third party was admissible, and, even if his earlier ruling was not erroneous, the evidence was irrelevant and unfairly prejudicial. He also determined that he had made a mistake in instructing the jury about comparative fault because there had not been sufficient evidence of the fault of the other defendants. As a result, the trial judge set aside the verdict and ordered a new trial. The order specified that it was based on ARCP Rule 59(a)(8) because of errors of law. Ford Motor Company appeals.

*I.*

## *Standard of Review*

The trial court based its decision to grant a new trial on errors of law, not on the fact that the verdict was clearly contrary to the preponderance of the evidence, or on one of the other grounds specified by Rule 59. Under A.R.C.P. Rule 59(a)(8), a new trial may be granted where there is error of law which was objected to by the party making the application, and the error materially affected the substantial rights of the party. *Id.; see also Nazarenko* v. *CTI Trucking Co.*, 313 Ark. 570, 856 S.W.2d 869 (1993). In *Security Insurance Co.* v. *Owen*, 255 Ark. 526, 501 S.W.2d 229 (1973), we wrote that, while a trial judge's discretion is much broader where the question is whether a jury verdict is supported by a preponderance of the evidence, still, his discretion in granting or denying a new trial based on errors of law should not be disturbed absent manifest abuse. *Id.* at 529, 501 S.W.2d at 231. Manifest abuse of discretion can be "discretion improvidently exercised." *Id.* at 530, 501 S.W.2d at 232. The showing that discretion was abused should be stronger when a new trial has been granted than when it has been denied. *Id.* at 529, 501 S.W.2d at 231. This court views a party who was the beneficiary of a verdict set aside by the granting of a new trial as having much less basis for a claim of prejudice than an unsuccessful movant for a new trial. *Id.* However, a clearly erroneous

interpretation or a clearly erroneous application of a law or rule can constitute a manifest abuse of discretion. *See Crowder* v. *Flippo*, 263 Ark. 433, 565 S.W.2d 138 (1978).

## II.

### Evidentiary Ruling

The evidentiary ruling came about as follows. After the accident, plaintiff Donald Nuckolls's employer installed a locking device on the lifting gears of a similar bed on another of its F-600 Ford trucks. Plaintiffs did not sue the employer, and Ford did not file a cross-complaint against the employer. Plaintiffs filed a pretrial motion objecting to the admission of the remedial evidence under A.R.E. Rule 407. Ford responded that, since the employer was a third party and had not been sued, the evidence was not subject to the restrictions of Rule 407. The trial court admitted the evidence.

Plaintiffs' pretrial motion was based on the grounds of a subsequent remedial measure and relevance. Plaintiffs' motion for a new trial contended that the introduction of the locking device was a subsequent remedial measure prohibited by Rule 407, and because the evidence was "central to Ford's defense strategy," it was substantial and prejudicial. In granting the motion for new trial, the court stated that the evidence fell within the purview of Rule 407, and, even if it did not, it was not relevant and that its prejudicial impact outweighed its probative value. This was the first mention of a weighing of prejudice against probative value.

Ford's first point of appeal is that the trial judge erred in granting a new trial on the ground that he had erred as a matter of law in admitting evidence of the subsequent remedial measure. The point is well taken.

### Rule 407

Rule 407 of the Arkansas Rules of Evidence provides:

> *Subsequent remedial measures.* — Whenever, after an event, measures are taken which, if taken previously, would make the accident less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. *This rule*

*does not require the exclusion of the evidence of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility or precautionary measures, if controverted, or impeachment.*

*Id.* (emphasis added).

In *Carton* v. *Missouri Pacific Railroad*, 315 Ark. 5, 865 S.W.2d 635 (1993), we distinguished between the admission of remedial measures taken by a third party and those taken by a defendant. *Id.* at 16, 865 S.W.2d at 640-41. The former is potentially admissible, *see Riggan* v. *Langley*, 238 Ark. 649, 383 S.W.2d 661 (1964), while the latter is excludable. *See generally* Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* ¶ 407 (1993).

It is undisputed that the measure was taken by plaintiff Donald Nuckolls's employer, who was not a party to the suit. It is generally recognized that "[b]ecause the controlling ground for excluding evidence has been the promotion of a policy of encouraging people to take safety precautions [citation omitted], remedial measures carried out by a person not a party to the suit are not covered [by Rule 407]." Weinstein, *supra* at 407-09; *see also Pau* v. *Yosemite Park*, 928 F.2d 880, 888 (9th Cir. 1991); *O'Dell* v. *Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Dixon* v. *International Harvester*, 754 F.2d 573, 583 (5th Cir. 1985).

In *Pau* v. *Yosemite Park*, a federal district court ruled inadmissible the fact that a sign had been erected warning bicyclists to stop at the site where a cyclist had been killed. *Id.* at 887. The Ninth Circuit Court of Appeals held the ruling was an abuse of discretion, because the sign had been erected by a nondefendant, rather than the party being sued. *Id.* at 888. The court reasoned that, "A nondefendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant." *Id.; see also Causey* v. *Zinke*, 871 F.2d 812, 816-17 (9th Cir. 1989).

## Rule 403

Plaintiffs' pretrial motion was based on A.R.E. Rule 407, the subsequent remedial measure rule, and Rules 401 and 402, the relevancy rules. The plaintiffs did not ask the trial court

to conduct a Rule 403 weighing of probative value against unfair prejudice.

The trial court erred in granting a new trial based on a Rule 403 weighing of probative value versus prejudice because that objection was not raised either before or during the trial. Rule 59(a)(8) of the Arkansas Rules of Civil Procedure provides that a new trial may be granted for an "error of law occurring at the trial *and objected to by the party making the application*" for the new trial. A.R.C.P. Rule 59(a)(8) (emphasis added); *see also Crowder*, 263 Ark. at 434, 565 S.W.2d at 139; *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990). Plaintiffs ask that we not follow the language of Rule 59(a)(8) in this case, because it is recognized that when evidence of a subsequent remedial measure is not barred by Rule 407, its probative value should outweigh any dangers associated by its admission. *See Carton*, 315 Ark. at 16, 865 S.W.2d at 641; *Anderson* v. *Malloy*, 700 F.2d 1208, 1213 (8th Cir. 1983). Plaintiffs correctly state the general evidentiary rule, and if they had objected on the basis of a Rule 403 weighing of probative value against prejudice either before or at trial, the trial court could have considered the matter in deciding whether to grant a new trial. However, plaintiffs did not make the objection, and Rule 59(a)(8) is clear. Thus, the trial court erred in holding that it could, for the first time in the motion for a new trial, weigh probative value against prejudice.

### *Rules 401 and 402*

We now turn to the relevancy issue which was raised by plaintiffs, both before and at trial.

Rule 401 of the Arkansas Rules of Evidence provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided." There are no other provisions applicable to this case.

To be relevant, it is not required that evidence prove the entire case or even all of a single issue. It requires only proof that has "any tendency" to make any fact that is of consequence to the determination of the action more or less probable. *Rich*

*Mountain Elec. Coop.* v. *Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992). When the argument is focused solely on relevance, with no consideration of prejudice because of the lack of a weighing objection, there is no support for the ruling that the subsequent remedial measure was not relevant.

Ford's primary defense was that the accident was caused, not by a defective truck chassis, but by the unexpected activation of the lift bed that held almost six tons of roofing scrap high above the truck. The lift bed was manufactured and installed by other defendants. Ford cross-examined plaintiff about how the lift activated, and how the accident occurred. It introduced testimony about the availability of safety devices that could have prevented the inadvertent lifting of the bed while the truck was in motion, and it introduced testimony that these devices were available at the time the lift was installed on the truck. It then proved that plaintiff's employer had installed one of these safety devices after the accident. This proof, taken together, had the tendency to show that the accident was caused by the failure of others to install a safety device, that such devices were available at the time the bed was installed on the truck, that it was feasible to install them at the time the accident occurred, and that a defective truck chassis was not the cause of the accident.

In sum, the trial court did not err at trial in admitting evidence of the subsequent installation of a safety device by a third party. It erred only in ruling that the admission of the evidence was a ground for a new trial.

### III.

### *Instructions*

The trial judge, in granting a new trial, concluded that he erred in giving instructions to compare the fault of plaintiff Donald Nuckolls, Ford, and the other defendants because "there was insufficient evidence of liability or fault" by the other defendants. The other defendants named by plaintiffs in their complaint and amended complaints were the Marion Metal Products Company (Original Marion), the manufacturer of the vertical lift bed, and the various successors to that company, including Truckstell; A.B. Seimer, Inc., and A.B. Seimer individually; Marion Metal Products Company (Successor Marion); Sycon Corporation; Mar-

ion Manufacturing, Inc.; and Hansen-Dayton, Inc. The complaint also named Randall Ford, Inc., the local dealership that sold the truck, and alleged it supervised the installation of the vertical lift bed. In an amended complaint plaintiffs named Truck Equipment Company as the entity that installed the vertical lift bed. In Ford's cross-claim against the other defendants, Ford denied negligence or any liability for the accident and asserted claims for contribution and indemnity against these same codefendants. Ford's cross-complaint also recited that plaintiffs alleged independent allegations of fault on the part of the other defendants.

### Randall Ford

Ford Motor Company presented sufficient proof of fault on the part of Randall Ford to entitle it to the instruction. Carl Rose, one of the principals at the Dale Crampton Roofing Company, Donald Nuckolls's employer, testified that the Dale Crampton Roofing Company purchased the 1976 Ford truck in question from Randall Ford with the vertical lift already installed. An invoice was offered as proof of purchase and indicated that the vertical lift was installed by the Truck Equipment Company. However, the amount for installation was included in the total purchase price paid Randall Ford. Rose testified that Crampton Roofing relied on Randall Ford or Truck Equipment Company to fit the vertical lift bed on the truck.

### Original Marion

Plaintiffs do not dispute that the proof showed the lift was a Marion lift, rather they contend that Ford failed to demonstrate which "Marion" company manufactured the lift. Carl Rose testified that the lift installed on the Ford F-600 truck involved in the accident was a 1964 Marion lift VL7272. Defendant's exhibit fifty-four was offered in support of this statement. The exhibit is a photocopy of the specifications on Marion vertical lifts models VL7272 and VL6246. While it is true that the specifications are undated and do not of themselves identify the lift in question, Carl Rose testified that the vertical lift in question was a 1964 Marion VL7272 vertical lift. His testimony was corroborated by that of Gilbert Herr, a former president and CEO of Marion Metal Products Company. Twice in his testimony he referred to the year 1964 in a way that one can only conclude that the lift in question was manufactured in 1964.

While there were several "Marion" entities involved in the suit, the evidence presented established the existence of only one of those entities in 1964, the Original Marion. Thus, neither the Successor Marion Metal Products Company, which came into existence in 1967, or the Marion Manufacturing Company, which acquired Successor Marion in 1976, could have manufactured a vertical lift in 1964. This was sufficient proof to entitle Ford to the instruction about Original Marion.

*Sycon Entities*

The Sycon Entities consist of Truckstell, A.B. Seimer, Inc., A.B. Seimer, individually, Marion Metal Products Co. (Successor Marion), and Sycon Corporation. The liability of these parties is derived from that of Original Marion. They could only be liable if the Original Marion was liable. The general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *Swayze* v. *A.O. Smith Corp.*, 694 F. Supp. 619 (E.D. Ark. 1988). We have recognized the general rule. *See Fort Smith Refrigeration & Equip. Co.* v. *Ferguson*, 217 Ark. 457, 230 S.W.2d 943 (1950). In *Swayze*, four exceptions to the general rule were set out: (1) where the transferee assumes the debts and obligations of the transferor by express or implied agreement; (2) where there is a consolidation or merger of the two corporations; (3) where the transaction is fraudulent or lacking in good faith; and (4) where the purchasing corporation is a mere continuation of the selling corporation. *Swayze*, 694 F. Supp at 622.

James Smith, the attorney who prepared the 1967 sale of assets from Original Marion to Truckstell/A.B. Seimer, Inc., testified that Truckstell was the purchaser and that it assigned its rights under the purchase agreement to A.B. Seimer, Inc. Smith indicated that Truckstell purchased all or substantially all of Marion's assets, including inventory, receivables, and work in process. Smith also testified that the factory employees and most of the office employees of the Original Marion continued on in their employment. His testimony indicated that the seller required the buyers and A.B. Seimer individually to execute an "indemnity assumption of liability agreement" as part of the consideration for the sale. A 1967 letter from Smith to the attorney for Original Marion verified the sale of assets and referred to the assump-

tion of liability agreement. Smith testified that after the sale the name A.B. Seimer, Inc. was changed to Marion Metal Products Company, Inc.

Gilbert Herr, president and CEO of the Original Marion in the 1960's, corroborated Smith's testimony. He indicated that Mr. Seimer was in charge after the purchase, but relied on employees of the Original Marion, including himself, to continue the day-to-day operation of the company. Herr testified that Successor Marion continued to make vertical lifts until he retired in 1976. Other managers and employees testified as to their continued employment and the continuity in production of goods after the Seimer purchase.

Thus, Ford presented sufficient evidence for the jury to consider whether, under either the continuation exception or the express assumption exception, Truckstell, Seimer, Inc., and Seimer individually assumed the liability of the Original Marion.

Plaintiffs, in their original complaint, alleged that Sycon Corporation succeeded to Original Marion's liabilities "because . . . on about October 15, 1971 Successor Marion merged into Sycon." In its answer, Sycon admitted "that on or about October 15, 1971 various corporations merged, including Sycon Corporation and Marion Metal Products Company [Successor Marion], and the resulting company was known as Sycon Corporation." In the oral argument of this case Ford stated that it relied on plaintiffs' proof on the matter, which was never contested, as sufficient proof of Sycon's merger with Successor Marion. However, in addition, Theodore Berger and James Smith both testified that at one time Sycon Corporation succeeded to the business. The general rule is that, after a merger, the resulting corporation is liable for the debts of the other corporation.

> Indeed, it has been said that public policy requires that the obligations of the extinguished corporation in a merger survive as obligations of the surviving corporation. Corporations cannot by merger or consolidation escape the obligation to pay debts incurred before the merger or consolidation or defeat the right of their creditors to subject their property to the satisfaction of such debt.

19 Am. Jur. 2d *Corporations* § 2715 (1986).

In summary, the trial court did not err in instructing the jury to compare the fault of plaintiff Donald Nuckolls, Ford Motor Company, and the other defendants based on insufficient identification of the Original Marion and insufficient proof of successor liability.

However, even if the giving of the instructions were in error, we would still reverse the grant of the new trial. The instructions that plaintiffs objected to were instructions numbers seven, eight, nine, thirteen, and twenty-five. Instructions seven, eight, and nine were modified versions of AMI Civil Instruction 206. Instruction seven stated that Ford contended that Marion Metal Products Co. was chargeable with fault that was a proximate cause of plaintiffs' damages and that Ford had the burden of proving such. Instruction eight stated the same as to A.B. Seimer, Inc., A.B. Seimer, individually, Successor Marion, and Truckstell Manufacturing. Instruction nine stated the same as to Randall Ford. Instruction thirteen, AMI Civil 306, stated that the word "fault" means "negligence and breach of warranty and supplying a product in a defective condition." Instruction twenty-five is AMI Civil 2111, concerning comparative fault and joint tortfeasors, and was given as follows:

> If you find that Donald Nuckolls was free of any fault which was a proximate cause of his claimed damages, then Donald Nuckolls is entitled to recover the full amount of any damages you may find he has sustained from any fault of Ford Motor Company which you find to have proximately caused these damages.

> If you should find that any damages sustained by Donald Nuckolls were caused by fault on the part of Donald Nuckolls and also were proximately caused by fault on the part of Ford Motor Company, then you must compare the percentage of fault to Donald Nuckolls, Ford Motor Company and any other party identified in these instructions contended by Ford Motor Company to be guilty of fault, proximately causing damage to Donald Nuckolls.

> If the fault of Donald Nuckolls was of less degree than the total fault of Ford Motor Company and all other parties identified in these instructions whom you find to be chargeable with fault, then Donald Nuckolls and Betty

Nuckolls are entitled to recover from Ford Motor Company any damages which you may find they have sustained after you have reduced their damages in proportion to the degree of Donald Nuckolls's own fault.

On the other hand, if the fault of Donald Nuckolls was equal to or greater than the total fault of Ford Motor Company and all of the parties identified in these instructions whom you find to be chargeable with fault, then Donald Nuckolls and Betty Nuckolls are not entitled to recover any damages.

The court, in instruction number ten, instructed the jury that more than one party could be deemed to have proximately caused plaintiffs' injuries, and, in instruction number fifteen, instructed the jury that "if you find that the negligence or fault of Ford Motor Company proximately caused damage to Donald and Betty Nuckolls, it is not a defense that some other persons may also have been to blame."

The jury was given four verdict forms. They were as follows:

(1) We, the jury, find in favor of the Plaintiff, Donald Nuckolls, and fix his damages as follows:

(2) We, the jury, find in favor of Betty Nuckolls and fix her damages as follows:

(3) We, the jury, find in favor of Ford Motor Company on the claims of Donald Nuckolls:

(4) We, the jury, find in favor of Ford Motor Company on the claims of Betty Nuckolls[.]

The jury answered verdict forms (3) and (4) in favor of Ford. In order to have done so the jury could have determined that plaintiffs failed to prove liability on the part of Ford. This finding would not have involved the other defendants. Alternatively, the jury could have determined that Donald Nuckolls was partially at fault and that his fault was equal to or greater than that of Ford and any other parties to whom the jury found that fault should be attributed. This finding would not have been affected by the addition of fault of other parties. If a jury determines the plaintiff is fifty percent or more at fault, it does not matter whether

there is one defendant or multiple defendants. Thus, the plaintiffs could not have been harmed by the instructions, even if they had been erroneous.

Plaintiffs contend that the introduction of the fault of the other parties misled the jury and caused the jury to think that the other parties were responsible. However, the addition of fault of other parties and the comparison of the fault of those parties against plaintiff Donald Nuckolls's fault would not have affected the verdict. Instruction fifteen instructed the jury that it was not a defense for Ford if some other person may also have been at fault. In addition, considering the options given to the jury in comparing fault under instruction twenty-five, it is obvious that there is no way the addition of fault of the other defendants could have affected the verdict as between Ford and plaintiffs. Thus, even if the instructions had been given in error, they could not have "materially affect[ed] the substantial rights" of appellees. *See* ARCP Rule 59(a).

We have stated that a moving party under Rule 59(a) must demonstrate that its rights have been materially affected by demonstrating that a "reasonable possibility of prejudice has resulted" from the error. *Diemer v. Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993). *Diemer* involved a granting of a new trial under subsection (2) of section (a) of Rule 59, concerning juror misconduct. However, the standard is equally applicable to Rule 59(a)(8), involving errors of law, because section (a) states at the beginning that all the grounds must materially affect the rights of the moving party. Since a reasonable possibility of prejudice was not demonstrated, the trial court erred in granting a new trial.

We reverse and remand for reinstatement of the jury verdict and entry of orders consistent with this opinion.