Tana Rachelle DOWNUM *v.* Brad Don DOWNUM

CA 07-533                                          274 S.W.3d 349

Court of Appeals of Arkansas
Opinion delivered February 6, 2008

*Cullen & Co., PLLC,* by: *Tim Cullen* and *Kami S. Wentz,* for appellant.

*Woodard Law Firm, PLC,* by: *Ernie Woodard,* for appellee.

D.P. MARSHALL JR., Judge. This divorce case is about custody and relocation. The dispositive question presented is whether the circuit court erred in concluding that Ms.

Downum committed a constructive fraud — an innocent misrepresentation by silence that justified the court vacating the custody provision of the Downums' agreed divorce decree. Convinced that the record contains insufficient evidence of a constructive fraud, we reverse and remand.

## I.

This is a case where the calendar is important. The Downums were married for almost four years. Their son, K.D., was born in 2002. They separated in May 2005. Ms. Downum hired counsel and filed for divorce; Mr. Downum filed an answer pro se. In early November 2005, Ms. Downum came to Mr. Downum with a proposed divorce decree. The proposal gave Ms. Downum custody of K.D. and included the circuit court's standard visitation for Mr. Downum: every other weekend, one day mid-week from after school to bedtime, alternating holidays, and time during the summer. Mr. Downum also had a right of first refusal to be K.D.'s babysitter whenever Ms. Downum needed one.

When Ms. Downum proposed the decree, which was a settlement of all the parties' disputes in the divorce, Mr. Downum knew that his estranged wife wanted to find a new job. Her boss at Tyson Foods was Mr. Downum's long-time friend, and this circumstance created an uncomfortable situation. Mr. Downum did not ask Ms. Downum whether she was considering looking for a job outside northwest Arkansas, where the parties lived. Ms. Downun did not tell Mr. Downum that she might consider potential jobs outside northwest Arkansas. Based on the proposed visitation schedule, Mr. Downum believed that relocation was not a possibility. In early November, Mr. Downum signed and approved the terms of the decree. He also waived the right to appear at the hearing on the decree.

Ms. Downum worked in accounting. About ten days after Mr. Downum approved the decree, Ms. Downum was actively looking for a new job. She looked for jobs in northwest Arkansas, including at Coca-Cola, Frito Lay, and other Wal-Mart vendors, as well as with various hospitals. She also used careerbuilder.com to investigate other job prospects. She sent out e-mails to employers who had open accounting positions. These potential employers included some in northwest Arkansas, Louisiana, and Tennessee. Ms. Downum did not tell Mr. Downum about the details of her job search. On December 1st, Ms. Downum and her counsel

appeared before the circuit court, which approved and entered the decree. We have no record of what was said at the hearing. Mr. Downum did not appear.

The next day, December 2nd, Fresenius Medical Care in Belle Chase, Louisiana, responded to one of Ms. Downum's November e-mails. During the next few weeks, Ms. Downum and Fresenius exchanged information about the position and her qualifications. She interviewed with the company. In late December, Ms. Downum accepted the job. It paid $6000 a year more than her former job and required less hours at work. She moved with K.D. to Louisiana in January 2006.

Mr. Downum hired counsel and immediately moved the circuit court to vacate the custody provision of the parties' divorce decree based on Ms. Downum's alleged fraud about her job plans. Mr. Downum also asked the court to consider what was in K.D.'s best interest and then award custody of their son to him. Ms. Downum responded, denying any legal basis to vacate the decree or change custody. K.D. was not yet in school, and so while the parties waited several months for a hearing, by agreement the child spent time with his mother in Louisiana and father in Arkansas.

The circuit court heard Mr. Downum's Rule 60(c)(4) motion first. The following additional important facts emerged at the hearing. Ms. Downum acknowledged that, had the parties' positions been reversed, she would have wanted to know that Mr. Downum was contemplating possible new jobs that would require relocation. Mr. Downum testified that, if he had known Ms. Downum was considering any jobs outside northwest Arkansas, then he never would have agreed for her to have custody of K.D.

After receiving all the evidence, the circuit court ruled from the bench and vacated the custody provision of the decree. The court stated:

> In considering the defendant's motion to vacate the Court's decree as to custody of the parties' minor child, I considered the undisputed, uncontroverted facts that the defendant signed a waiver on November 9th, 2005, which the plaintiff submitted to him, and that on that date he also signed the parties' divorce decree; on November 19th, 2005, the plaintiff sent an e-mail to what became her current employer, Defendant's 3; this Court entered its decree, approved by the parties, on December 1st, 2005; and on December 2nd, 2005, the plaintiff had telephone contact with her current

employer, which resulted in an interview with that employer on December 9th, 2005; given that the plaintiff and defendant both acknowledge that the defendant signed the waiver, admitted as Defendant's Exhibit 1, based on their conversations and the proposed arrangement regarding custody and visitation.

As to the law applied in this case, I reviewed the decision of the Arkansas Supreme Court in the case of *Dickson v. [Fletcher]*. Counsel, that citation is 206 S.W.3d 229. In that opinion the court said that 'This court has held that constructive fraud for the breach of a legal or equitable duty to another warrants setting aside or modifying a judgment.'

It is the ruling of this Court that given the facts outlined the plaintiff had an equitable duty to notify the defendant of any material change regarding the custody of their child prior to the entry of this Court's decree and that that was not done. Therefore, the defendant's petition to set aside the decree as to custody is granted.

After a break, the court heard testimony about what custody arrangement would be in K.D.'s best interest. The court concluded that, in light of its Rule 60 decision, it had to make an initial custody decision. The court then ruled that it was in K.D.'s best interest to be in his father's custody. The court filed orders on all these points in due course. Ms. Downum's timely appeal brings the matter before us.

## II.

Our standard of appellate review has several layers. We review the circuit court's Rule 60 decision to vacate part of the decree for an abuse of discretion. *Grubbs v. Hall*, 67 Ark. App. 329, 332, 999 S.W.2d 693, 694 (1999). A circuit court abuses its discretion when it makes an error of law. *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 20-21, 894 S.W.2d 897, 900 (1995). We evaluate the circuit court's factual findings about the elements of constructive fraud for clear error. Ark. R. Civ. P. 52; *Knight v. Day*, 343 Ark. 402, 405, 36 S.W.3d 300, 302 (2001). If the circuit court clearly erred about Ms. Downum's alleged pre-decree intention to move, then no constructive fraud occurred, and the court's grant of relief under Rule 60 was an abuse of discretion.

## III.

To establish fraud in Arkansas, a plaintiff must prove that the defendant intentionally misrepresented a material fact and that the

plaintiff was damaged by justifiably relying on that misrepresentation. *Roach v. Concord Boat Corp.*, 317 Ark. 474, 476, 880 S.W.2d 305, 306-07 (1994). In some fraud cases, however, the plaintiff need not prove the defendant's intent to deceive — constructive fraud, sometimes called fraud in the law, may exist in the complete absence of dishonesty of purpose, evil intent, or moral guilt. *Ibid.* Unlike actual fraud, constructive fraud is based on a breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others. *Ibid.* Mr. Downum had to prove each factual element of fraud except intent by a preponderance of the evidence. *Ibid.*

Here, the circuit court concluded that Ms. Downum committed constructive fraud by misrepresenting her intention to continue living in northwest Arkansas. In its order vacating the divorce decree, the circuit court found that she "had an equitable duty to notify [Mr. Downum] of any material change regarding the custody of the parties' minor child (her intent to move to Belle Chase, Louisiana) prior to the entry of this Court's decree, and she failed to do so." Considering the entire record we hold that the circuit court clearly erred by concluding that Ms. Downum intended to move to Louisiana before the decree was entered. Considering the governing law, this factual error undermines the circuit court's legal conclusion that constructive fraud occurred. *Roach*, 317 Ark. at 477, 880 S.W.2d at 307.

The circuit court relied on *Dickson v. Fletcher*, 361 Ark. 244, 250-51, 206 S.W.3d 229, 333 (2005). In that divorce case, the husband failed to disclose that he owned Exxon stock in his sworn answers to discovery or in his affidavit of financial means. He also omitted any reference to the stock in his trial testimony. The circuit court found that the husband had committed a constructive fraud and modified the parties' divorce decree. Dr. Dickson had a legal duty to answer discovery requests, and testify, truthfully and completely.

As in *Dickson*, Ms. Downum's alleged constructive fraud was based on a nondisclosure, rather than an affirmative misrepresentation. Silence can be the basis of a constructive fraud. *Ward v. Worthen Bank & Trust Co., N.A.*, 284 Ark. 355, 359-60, 681 S.W.2d 365, 368 (1984). Generally, however, liability for a nondisclosure may be found only in special circumstances. *Ibid.* Thus Mr. Downum had to prove more than Ms. Downum's

silence. He had to prove that she concealed a material fact known to her and that she had a duty to communicate that fact to him. *Ibid.*

Unlike the husband in *Dickson*, Ms. Downum did not give incomplete answers to discovery requests before the decree. She did not omit facts from any pre-decree pleading or court document. She did not lie under oath before the court entered the divorce decree. Ms. Downum did not tell Mr. Downum that she had applied for in-state and out-of-state jobs in mid-November. Nor did she tell him that she might move out of the area if she was offered a better job in a different state. The possibility she might relocate, however, was not a "fact" that Ms. Downum had a duty to disclose to Mr. Downum before the divorce decree was entered.

In general, fraud actions must be based on misrepresentations related to a past event or a present circumstance, not on an intention or a prediction about a future event. *P.A.M. Transport, Inc. v. Arkansas Blue Cross and Blue Shield*, 315 Ark. 234, 240, 868 S.W.2d 33, 36 (1993). If Ms. Downum had decided to move away from northwest Arkansas in November, then her silence about that decision in the face of the proposed visitation schedule could be a basis for fraud. *Ibid.* If, however, Ms. Downum honestly represented her then-existing intention to remain in northwest Arkansas when she presented the proposed decree to Mr. Downum and when she presented it to the circuit court, then her nondisclosure cannot be the basis of fraud simply because she later decided to move. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 165, 879 S.W.2d 451, 454 (1994); *Starling v. Valmac Industries, Inc.*, 589 F.2d 382, 386-87 (8th Cir. 1979). Put another way, this would be a different case if Ms. Downum had decided to relocate before the circuit court entered the decree.

■ Contrary to the circuit court's ruling, Mr. Downum did not prove by a preponderance of the evidence that Ms. Downum intended to move to Louisiana at any point before the decree was entered. Ms. Downum testified that, as of December 1st, her only contact with Fresenius or any other potential employer — including several in northwest Arkansas — was a bunch of e-mail job applications. There was no evidence that any potential employer had responded to her e-mail inquiries before December 2nd. She did not quit her former job at Tyson until late December 2005. And there was no evidence that she had any definite plan to move to Louisiana until about three weeks after the divorce was final. At most, Mr. Downum proved that Ms.

Downum had not foreclosed the possibility of moving somewhere out of state if offered a better job there. Such an uncertain notion cannot be the basis of fraud. *Delta School of Commerce, Inc. v. Wood*, 298 Ark. 195, 199-200, 766 S.W.2d 424, 426-27 (1989). A possibility is not a material fact.

Divorce proceedings usually mean that the status quo is undesirable to one or both spouses. Each divorcing party is contemplating changes in their lives at the time of the decree. Requiring each party to disclose *sua sponte* every possibility that might lead to a change of circumstances in the future would impose a burden both too heavy and unworkable. Granted, Ms. Downum acknowledged at the hearing that, if the tables were turned, she would have liked for Mr. Downum to have told her that he had sent an e-mail to a potential out-of-state employer. A litigant's preference for complete information, however, does not create a legal or equitable duty.

Mr. Downum did not prove constructive fraud, moreover, because he did not show that he justifiably relied on Ms. Downum's nondisclosure. In cases of nondisclosure, especially when the parties are in an adversarial position, each has a duty to investigate the circumstances and protect his own interests. *Kinkead v. Union Nat'l Bank*, 51 Ark. App. 4, 14-15, 907 S.W.2d 154, 160 (1995). Here, Mr. Downum knew that Ms. Downum was looking for a new job because she worked for his long-time friend at Tyson. Visitation, babysitting, and the normal considerations of custody were certainly issues in the divorce proceeding. Yet Mr. Downum did not ask Ms. Downum informally if she planned to move. Unlike in the *Dickson* case, he propounded no pre-decree discovery. The law does not allow Mr. Downum to omit all inquiry and then complain that Ms. Downum did not volunteer information. *Kinkead, supra.*

Finally, in considering whether Ms. Downum violated any legal or equitable duty, we are mindful that the issue here is relocation. Our supreme court has made it clear that Arkansas law now presumes that a custodial parent's decision to move is in the minor's best interest and that a move is not a material change in circumstances. *Hollandsworth v. Knyzewski*, 353 Ark. 470, 476-85, 109 S.W.3d 653, 657-63 (2003). Ms. Downum urges us to reverse because, she argues, the circuit court's decision circumvents *Hollandsworth*. Ms. Downum had no duty to advise Mr. Downum that Arkansas law presumes that she could relocate after the divorce

without affecting custody. We decline to hold, however, that *Hollandsworth* means that a parent's pre-divorce plans about relocation are beyond the reach of our general law of fraud. The circuit court clearly erred in finding that Ms. Downum had a pre-decree intention to move. Mr. Downum, moreover, made no inquiry about relocation. In these circumstances, Ms. Downum had neither a legal nor an equitable duty to disclose mere possibilities about her future. We therefore need not decide this case on the broader ground urged.

## IV.

The confluence of important dates made it appear in hindsight that Ms. Downum planned to relocate before the circuit court approved the decree. But the record did not sustain that appearance. The preponderance of the evidence does not demonstrate a pre-decree plan to move. It demonstrates a possibility of relocation. Ms. Downum's nondisclosure of a possibility that Mr. Downum never inquired about was not constructive fraud. The circuit court erred in concluding otherwise, and therefore abused its discretion by granting Rule 60(b) relief. We reverse and remand with instructions to return custody of K.D. to Ms. Downum and provide reasonable visitation to Mr. Downum considering all the material circumstances.

Reversed and remanded with instructions.

PITTMAN, C.J., GLADWIN, and BAKER, JJ., agree.

HART, J., concurs without opinion.

BIRD, J., concurs.

ROBBINS, GRIFFEN, and MILLER, JJ., dissent.

SAM BIRD, Judge, concurring. I agree with the decision to reverse the trial court's change-of-custody order. I also agree that the trial court clearly erred in finding that Ms. Downum had an equitable duty to notify Mr. Downum of her intent to move to Louisiana prior to the entry of the decree. But I write separately to express my concern that the trial court's decision circumvented the law of *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), and that today's decision by this court impermissibly expands the *Hollandsworth* factors to be considered in relocation cases.

The non-custodial parent moving for a modification of custody has the burden of showing a material change of circumstances sufficient to warrant a change in custody, *Middleton v.*

*Middleton*, 83 Ark. App. 7, 113 S.W.3d 625 (2003), and the relocation of a primary custodian and children alone is not such a material change in circumstances. *Hollandsworth, supra*. Under *Hollandsworth*, there is a presumption in favor of relocation for custodial parents with primary custody, and the noncustodial parent has the burden to rebut the presumption. *Id*. The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters:

> (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

353 Ark. at 487, 109 S.W.3d at 663-64.

In his petition to vacate the divorce decree and award of custody, Mr. Downum alleged that Ms. Downum had fraudulently induced him into not contesting the divorce and custody award by not informing him that she would move, had a desire to move, or was entertaining employment options that would require relocation. He prayed that the divorce decree be vacated and that he be awarded custody. Alternatively, he asked that the decree be modified to award him custody based upon a material change in circumstances and the child's best interests. Ms. Downum denied the allegations regarding fraudulent inducement, and she asserted that there was no legal or factual basis for vacating the divorce decree. She affirmatively stated that there had been no material change in circumstances that would justify a change in custody, citing the *Hollandsworth* holding that relocation alone does not constitute a material change in circumstances.

I agree with Ms. Downum's argument on appeal that the allegation of constructive fraud as a basis for vacating the previous decree and making an initial determination of custody was merely a means of circumventing the law of *Hollandsworth*. This is a simple relocation case in which Ms. Downum, the custodial parent, was entitled to a presumption in favor of relocation with the child. Mr. Downum failed to rebut that presumption because he presented no material change of circumstance to justify a change of custody.

I strongly disagree with the majority's implication that, had Ms. Downum decided to relocate before the circuit court entered its decree, the trial court would have been justified in vacating the agreed decree and award of custody to Ms. Downum. To hold that a divorcing spouse, who may subsequently become the custodial parent, has a duty to disclose his or her relocation plans to the other spouse before the entry of a divorce decree will open a Pandora's box in future cases, requiring the relocating party to prove, as a condition of relocating, the wholly irrelevant factor of when he or she made the decision to relocate. This is not the law under *Hollandsworth* and we should not make it the law in this case.

The record of this case contains absolutely no evidence that rebuts the *Hollandsworth* presumption in favor of Ms. Downum's right to relocate with her child to Louisiana, and I would reverse the trial court's decision on that basis alone, without regard for when she made the decision to do so.

WENDELL GRIFFEN, Judge, dissenting. This appeal presents three related issues. First, did the trial court err when it found that Ms. Downum committed constructive fraud? Second, if the constructive-fraud finding was not clearly erroneous, did the trial court abuse its discretion by vacating a previous order that awarded custody of the parties' son to Ms. Downum? Finally, did the trial court err by awarding custody of the child to Mr. Downum?

I dissent from the decision announced by the majority opinion because the trial court did not clearly err in determining that Ms. Downum committed constructive fraud. The trial court's decision to vacate the previous custody award was not an abuse of discretion. And, the trial court's decision to award custody to Mr. Downum was not clearly erroneous.

### Background Facts

Ms. Downum filed for divorce against Mr. Downum on August 19, 2005. After Mr. Downum filed a *pro se* answer, Ms. Downum proposed and Mr. Downum signed a waiver of appearance and an agreed divorce decree on November 9, 2005, giving primary custody of Koel, their son who was born in August of 2002, to Ms. Downum. Mr. Downum testified that he was not sure whether to sign the waiver of appearance but did so, in part, because Ms. Downum told him that she would work with him regarding visitation. Pursuant to the precedent that Ms. Downum

prepared and presented to the trial judge, Mr. Downum was to have standard visitation, including weekly mid-week visitation. In addition, the parties agreed that Ms. Downum was to check with Mr. Downum first if she needed a babysitter. A hearing was set for December 1, 2005.

Ms. Downum claims that she sent a "flurry of blind" e-mails on or around November 20, 2005, to various employers in northwest Arkansas; Memphis, Tennessee; and Belle Chase, Louisiana (where her cousin and friends live). As the trial court observed, documentary evidence of only the Belle Chase e-mail was submitted as evidence (which was secured by Mr. Downum).

When Ms. Downum presented the precedent to the trial judge, she did not inform Mr. Downum or the trial judge that she was seeking a job outside of Arkansas. On December 1, the trial judge approved the parties' agreement and entered the divorce decree. Ms. Downum claims that the next day, December 2, she received her first response from Fresenius Medical Care, in Belle Chase, with whom she ultimately accepted employment. Ms. Downum moved to Belle Chase in January 2006 and has since lived there with her cousin.

Ms. Downum testified that the November 20 e-mail was of no consequence and that it was not important to inform Mr. Downum of the e-mail, even though he had previously signed the waiver and even though she admitted that she told Mr. Downum that she would work with him regarding visitation. Ms. Downum denied that she knew, prior to the divorce, that she would be moving. She admitted that she did not tell Mr. Downum before the divorce that she was seeking employment out of state or that she intended to move out of state, essentially because she did not know whether she would actually get a job out of state. However, she admitted that she knew it was a possibility that she might move out of state. She also admitted that if the situation had been reversed she would have expected to be informed that Mr. Downum had e-mailed a job inquiry to a prospective out-of-state employer.

Further, Ms. Downum admitted that she did not tell the trial judge on December 1 that she was actively seeking employment out of state because she "wasn't seriously thinking about moving at that time" and did not seriously think about moving until she received a formal offer of employment. According to Ms. Downum, she did not decide until December 22 to move.

The majority opinion does not mention, but it is certainly relevant to our review, that prior to the custody hearing, Mr. Downum submitted requests for interrogatories, asking Ms. Downum in numerous and very explicit ways to specify the first date that she considered leaving the state and the first contact she had with Fresenius, regardless of who initiated the contact. *Ms. Downum listed December 2 as her first contact date (the day after the divorce hearing), not the November 20 e-mail.* She gave various explanations for this omission: that she did not know the date she sent her first e-mails; that, she thought the word "contact" meant "a two-way conversation"; and that she thought the question asked about when she actually spoke to Fresenius. Ms. Downum asserted that she thought the interrogatory that asked when she first had "any inclination whatsoever to leave" Arkansas "for any reason what-soever" meant the date "there was a verifiable chance that there's a possibility I could have a job with another company."

Additionally, Ms. Downum admitted that she answered "Not applicable" and that she failed to list CareerBuilder in her response to an interrogatory that requested that she provide information on any employment agency or services that she had contacted within the past two years. She could not remember why she answered the interrogatory in that manner, but she believed that everything was "above board" and that she would not have felt deceived if she had been Mr. Downum.

### Constructive Fraud

Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt or the valid reason, the law declares fraudulent because of its tendency to deceive others; neither actual dishonesty or purpose nor intent to deceive is an essential element of constructive fraud. *See South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 871 S.W.2d 325 (1994). Here, the trial court weighed the credibility of the witnesses, applied the correct law concerning constructive fraud, and objectively determined that Ms. Downum committed constructive fraud because she had an equitable duty to inform Mr. Downum of any material change regarding the custody of Koel prior to entry of the divorce decree — specifically, her efforts to obtain employment outside Arkansas — and she failed to do so. *See, e.g., Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005) (holding that an ex-husband had a legal and an equitable duty to disclose, at the

time of the divorce, the fact that he owned stock, and setting aside the marital property provision of the divorce decree because he failed to do so).

The trial court here had ample evidence to support the conclusion that Ms. Downum breached an equitable duty to notify Mr. Downum and the court that she was seeking employment outside the area that was reasonably accessible for Mr. Downum insofar as the visitation and related baby-sitting care aspects of the divorce decree were concerned. It was undisputed that Ms. Downum presented Mr. Downum with a waiver of appearance and proposed divorce decree on November 9, 2005. The proposed decree called for Ms. Downum to have primary custody, and specified that Mr. Downum would have mid-week visitation on one evening each week. The proposed decree also stated that "Should Plaintiff [Ms. Downum] have the need for baby sitting *at any time*, she shall first check with Defendant to see if he is willing to watch after the child, prior to make (sic) alternative baby-sitting arrangements." (Emphasis added.) Thus, the trial court's constructive fraud finding raises a fundamental issue: whether preparation and tender of the proposed divorce decree, with its custody and visitation provisions, created an equitable duty on the part of Ms. Downum to disclose her intention and efforts to locate and obtain employment in places where the visitation and baby-sitting provisions of the proposed decree would be materially affected, if not altogether frustrated.

Before today's decision, most attorneys and trial judges would consider this question easy to answer with a resounding affirmative. After all, Rule 11 of the Arkansas Rules of Civil Procedure states that:

> The signature of an attorney *or party* constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact . . . , and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Emphasis added.)

Furthermore, it is common knowledge throughout the Arkansas bench and bar that judges and attorneys rely on the good faith and accuracy of matters related in pleadings in uncontested matters. Therefore, the view that Ms. Downum somehow owed no duty to

disclose her efforts to find employment in Belle Chase, Louisiana — a locale removed from Northwest Arkansas by a ten- hour drive — runs counter to established law and common knowledge within the legal community. It is remarkable, to put it mildly, that the majority opinion appears to disregard a duty that, until now, has been a hallmark of our litigation process.

That said, the trial court was obliged to determine whether the facts preponderated in favor of a finding that Ms. Downum contemplated employment away from the area where Mr. Downum could exercise the visitation and baby-sitting provisions of the decree that she represented to him that she would present to the trial court, and that she would honor if the trial court entered it. Ms. Downum's evasive and inconsistent responses to Mr. Downum's discovery requests about her employment efforts certainly qualified as competent proof about whether she was forthright. The trial judge was able to observe her demeanor while hearing her testimony. Regardless of whether one agrees with the trial judge's conclusion, he had a far superior opportunity to assess Ms. Downum's demeanor and weigh her credibility than does any member of this or any other court. In fact, our supreme court and this court have often declared that we accord deference to the superior position of trial judges in determining the credibility of witnesses and the weight to be given their testimony. *See Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004); *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001).

It must necessarily follow, therefore, that the majority has concluded that the trial court erred *as a matter of law* in finding that Ms. Downum committed constructive fraud. I cannot subscribe to that conclusion, nor do I find any basis in the record for it. Ms. Downum's failure to mention the November 20 e-mail, her misleading and evasive answers to the interrogatories, and her failure to inform Mr. Downum or the trial court before the December 1 hearing that she was seeking employment out of state constitute relevant and probative evidence that supports the trial judge's conclusion, as does the fact that Ms. Downum sought a job in a city in another state where she had existing ties *after* she persuaded Mr. Downum not to contest custody, but *before* the divorce decree was entered. Moreover, Ms. Downum knew that Mr. Downum signed the waiver of appearance and agreed to custody in the expectation that Koel would live at least close enough that Mr. Downum could exercise mid-week visitation and could serve as Koel's first babysitter.

The majority labels Ms. Downum's withholding of information relevant to the custody determination "an innocent misrepresentation by silence" and concludes that the evidence merely demonstrated the "possibility" that she might relocate, which was not a material fact or present circumstance that she was obliged to disclose. In so doing, the majority improperly assumed the role of a factfinder and overturned the trial court's credibility determination regarding the nature of Ms. Downum's intent and when it was formed. No member of our court heard the evidence or otherwise is qualified to reach a reliable conclusion about whether Ms. Downum's silence was innocent or intentional. We certainly are not more likely to reach a reliable — let alone accurate — conclusion about her intent. Yet, the majority now overturns the credibility assessment made by the only judge who both heard the evidence and personally observed Ms. Downum when she testified about why she did not inform Mr. Downum or the Court about her intention to seek out-of-state employment.

The majority also misapplies the law concerning constructive fraud, and presumes that because this case did not involve actual fraud, it is unaffirmable. However, constructive fraud does not require actual dishonesty or purpose or the intent to deceive, but focuses on the conduct's *tendency* to deceive others. *See South County, Inc., supra.* The tendency to deceive is undeniable where Ms. Downum secured a waiver of appearance from Mr. Downum by assuring him that she would work with him on visitation (which she did not do), and thereafter presented the precedent providing Mr. Downum mid-week visitation and the right to be Koel's first babysitter, while actively exploring and soliciting employment opportunities in locations that made the mid-week visitation and baby-sitting provisions useless.

Simply put, Ms. Downum's conduct in concealing from Mr. Downum that she was seeking a job out of state, while inducing him to agree to the custody provision in the initial divorce decree, deceived Mr. Downum and the trial judge. Both believed that Ms. Downum would live close enough so that Mr. Downum could exercise mid-week visitation and serve as Koel's first babysitter. Thus, solely *due to Ms. Downum's concealment*, the trial judge entered the divorce decree and original custody order without knowing relevant facts relating to Koel's best interests — the terms of the divorce decree implied to the trial judge that he was sanctioning a custody arrangement that did not require Koel to commute

twenty-hours round-trip to visit his father.[1] If we do not affirm on these facts, no trial judge will ever be able to grant a motion to vacate in similar situations except where actual fraud is shown.

The majority emphasizes that Mr. Downum did not propound discovery or make inquiries as to Ms. Downum's living arrangements before the divorce hearing. But there is an obvious reason why he did not do so — Ms. Downum induced him into entering a waiver of appearance. She agreed to visitation terms — including mid-week visitation — that favored him. Nothing about the visitation proposal implied that Mr. Downum and Koel would have to negotiate a twenty-hour round trip. Mr. Downum was not required to ask Ms. Downum if she intended to move out of Arkansas where she clearly represented to him that she would not behave in a manner that would frustrate the express visitation terms that she proposed. The very essence of fraud is that the party committing the fraud acts in a manner that precludes a reasonable person from making inquiry or otherwise discovering the fraud. In the simplest terms, given Ms. Downum's conduct, Mr. Downum had no reason to propound discovery or inquire where Ms. Downum would live.

### The Order Vacating the Custody Decree

The majority does not deny that a trial court has the authority to vacate an order or decree procured by fraud, be the fraud actual or constructive. Obviously, fraudulently procured relief is voidable, and one would hope that courts would not hesitate to vacate orders that are procured through fraud. The decision announced today will do nothing to strengthen the resolve of trial judges to invalidate orders procured through constructive fraud, however, and can be expected to invite disin-

---

[1] It should not be overlooked that the presumption favoring a custodial parent's relocation did not apply *prior to* the divorce hearing, because Ms. Downum had not yet been named the custodial parent. Notwithstanding the majority and concurring opinions' suggestion to the contrary, I do not seek to circumvent or alter the law established in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). I would simply point out that the law according to *Hollandsworth* is what causes Ms. Downum's failure to disclose her plans to move out of state to be so egregious. Ms. Downum knew, or at least is charged with knowing, the law. The law, pursuant to *Hollandsworth* is that, upon becoming the custodial parent, Ms. Downum gained the very significant presumption that her move to southern Louisiana was in the best interest of her child. Consequently, it was to her strategical benefit for the decree of divorce to be entered before she sought leave to remove the child out of state.

genuous conduct by more litigants who are willing to gamble that their disingenuity will either go undiscovered or produce no adverse consequences.

### The Custody Award to Mr. Downum

Finally, I would affirm the trial court's grant of custody to Mr. Downum. Once the trial court vacated the prior custody award, it properly treated the issue as an initial custody determination. Koel was approximately four-and-a-half years old at the time of the hearing. For most of his life, he either lived in the home with both parents or split his time between them in two-week increments. The trial court found that both Mr. and Ms. Downum were good parents, but concluded that it was in Koel's best interest to be placed with Mr. Downum because Koel's extended maternal and paternal family reside in northwest Arkansas, which is approximately ten hours (one way) from Belle Chase. The record supports that Koel spent a lot of time with Mr. Downum's mother, in particular. On these facts, the trial court did not err in awarding Mr. Downum custody.

I respectfully dissent, and am authorized to announce that Judges Robbins and Miller join this opinion.