

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-181

| | |
|---|---|
| KEIKO WAGSTER<br><br>APPELLANT<br><br>V.<br><br>JEFFREY D. WAGSTER<br><br>APPELLEE | **Opinion Delivered** October 30, 2013<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT<br>[NO. 2006-350-2]<br><br>HONORABLE ADAM HARKEY, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Keiko Wagster, ex-wife of appellee Jeffrey Wagster, appeals from the circuit court's denial of her request to set aside the parties' 2006 divorce decree five years after it was entered. Keiko filed a motion to set aside the decree on October 11, 2011, alleging that, at the time of the divorce, Jeffrey fraudulently represented to her that she was not entitled to any of his military retirement and, in reliance on this misrepresentation, she entered into a property-settlement agreement that made no distribution of this asset. The question presented is whether the circuit court abused its discretion in refusing to set aside the decree. We find no abuse and affirm the circuit court's order.

Keiko was born in Japan. The parties were married there in 1982 while Jeffrey was stationed on active duty with the United States Marine Corps. While married, the parties lived abroad on United States military bases, where English was the primary language, until

SLIP OPINION

they moved to the United States, where they lived for approximately seventeen years before the divorce. Testimony of both parties indicated that Keiko spoke English well and had worked in various English-speaking jobs while on the bases and in the United States, often as a translator.

Jeffrey testified that, after his retirement in 1998, Keiko regularly expressed her desire to get a divorce. He said that he finally hired a lawyer and filed a complaint for divorce on August 2, 2006. He testified that he and Keiko discussed property division at length and made a list of the division of assets that ended up in the final property-settlement agreement. He said that he told Keiko that she could hire an attorney if she was not happy with the agreement. Jeffrey testified that they discussed his military retirement and that he did not try to trick her or misrepresent any facts. He told his attorney that he was giving Keiko the house and would continue to make mortgage payments until it was paid off in exchange for keeping all of his retirement benefits. He testified that he did not tell Keiko that she was not entitled to his retirement but asked her to agree not to "get into it." He also testified that, including the home mortgage of approximately $67,000 that he agreed to pay, he agreed to pay additional marital debt that, with the mortgage, totaled "well over $100,000."

At the time the parties divorced, Keiko signed an entry of appearance and waiver of service in addition to the property-settlement agreement. The court entered the decree on September 16, 2006, in which it incorporated the property-settlement agreement by reference. A year later, at Keiko's insistence, the parties signed a separate, informal agreement in which Jeffrey agreed to give Keiko several of the items that had been awarded to him in

2

the divorce. Jeffrey testified that she asked about his retirement at that time and he told her that she could "get a lawyer and we'll fight about it," but he had given her 100% of the marital home on which he continued to pay the mortgage and he did not intend to give her any of his retirement. He reminded her that they worked it out that way so that she would not have to pay the mortgage or rent.

Keiko testified that she filed this action in response to Jeffrey's filing a petition for an order of protection against her. She testified that her lawyer mentioned that she might be entitled to some of Jeffrey's retirement benefits because the benefits were not mentioned in the property-settlement agreement. She said she was so upset at the time of the divorce that she "didn't think right," that she did not read the agreement, and that she just "signed over everything." She testified that Jeffrey told her that she was not entitled to his retirement or disability. She said that she believed him and relied on his statement. Although she said that she had known that she could hire her own lawyer, she had chosen not to because Jeffrey had told her it would be too expensive and they would "be broke" and "homeless" if she did. She testified that she first realized that she might be entitled to some of Jeffrey's retirement several days after she signed the property-settlement agreement and that she talked with an attorney a few months later. She claimed that the attorney told her it was too late.

The parties' daughter, Angela, testified that her mom "was an extremely intelligent person" and knew that she could hire a lawyer but chose not to do so. She said that, unbeknownst to her father, she overheard him give her mom the papers to sign for the divorce. She testified that Jeffrey told her mother to sign them and said that she could read

3

them later. Angela said that, in response to her mom's statement that she wanted to read the papers and perhaps talk to a lawyer, her father told her mom not to do that because it would be a waste of money.

On October 28, 2012, the circuit court filed a letter explaining its decision to deny Keiko's motion to set aside the divorce decree. On December 13, 2012, the court entered an order denying Keiko's motion, finding specifically that she failed to present sufficient evidence of fraud to meet her burden of proof to set the decree aside and that her reliance on Jeffrey's legal opinion regarding his military retirement was neither reasonable nor justifiable.

On appeal, Keiko contends that the circuit court erred in determining that the divorce decree and incorporated property settlement were not tainted with fraud as contemplated by Rule 60 of the Arkansas Rules of Civil Procedure. A circuit court may set aside a judgment or order more than ninety days after the filing of the judgment or order for misrepresentation or fraud. Ark. R. Civ. P. 60(c)(4) (2013). We review a circuit court's decision under Rule 60 for an abuse of discretion. *Downum v. Downum*, 101 Ark. App. 243, 247, 274 S.W.3d 349, 352 (2008). A circuit court abuses its discretion when it makes an error of law. *Id.* We evaluate the circuit court's factual findings about the elements of fraud for clear error. *Id.* Disputed facts and determinations of credibility of witnesses are within the province of the fact-finder. *Carroll v. Carroll*, 2013 Ark. App. 401, at 5.

To establish fraud in Arkansas, a plaintiff must prove that the defendant intentionally misrepresented a material fact and that the plaintiff was damaged by justifiably relying on that

4

SLIP OPINION

misrepresentation. *Downum*, 101 Ark. App. at 247–48, 274 S.W.3d at 352. The party seeking to set aside a judgment on the basis of fraud has the burden of proving fraud by clear, cogent, and convincing evidence or, as our courts have sometimes said, clear, strong, and satisfactory proof. *Carroll*, 2013 Ark. App. 401, at 5.

Keiko contends that Jeffrey told her that she had no marital interest in his military retirement, that she relied on this statement, and that she was damaged as a result. She argues that the circuit court erred as a matter of law in concluding that Jeffrey's statement of law cannot be classified as fraud and argues also that the circuit court's findings are clearly erroneous.

First, the trial court did not find that Jeffrey's "statement of law" cannot be fraud. Rather, the court found that, during their divorce negotiations, Jeffrey told Keiko that she was not entitled to his military retirement. The court found that this was a statement of opinion, not a statement of fact. Moreover, and critical to the court's decision, the court found that Keiko's reliance on this opinion was neither reasonable nor justifiable.

Keiko claims that her case is factually and legally similar to *Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005), because Jeffrey induced her to settle their property rights by telling her something that was not true just as Mr. Dickson induced his wife to settle without having all the relevant facts. Keiko's reliance on *Dickson* is misplaced. In *Dickson*, the supreme court affirmed the circuit court's finding of constructive fraud where Mr. Dickson misrepresented his net worth during the divorce by failing to disclose over $100,000 in Exxon stock in spite of Ms. Dickson's request for the information in discovery. The circuit

5



court found, and the supreme court in *Dickson* affirmed its finding, that Mr. Dickson owed

a legal duty pursuant to Ark. R. Civ. P. 33(b) to answer discovery requests truthfully and

completely. Here is the court's reasoning.

> This court has held that constructive fraud or the breach of a legal or equitable duty
> to another warrants setting aside or modifying a judgment. *See RLI Ins. Co. v. Coe*,
> 306 Ark. 337, 347, 813 S.W.2d 783, 788 (1991); *see also Davis v. Davis*, 291 Ark. 473,
> 725 S.W.2d 845 (1987). A party to a legal proceeding owes a duty to answer
> discovery requests under oath, Ark. R. Civ. P. 33(b), and is under a further duty to
> reasonably amend a prior response to discovery when he knows that the response,
> though correct when made, is no longer true, and the circumstances are such that a
> failure to amend the response is in substance a knowing concealment. *Phillips v.
> McAuley*, 297 Ark. 563, 764 S.W.2d 424 (1989) (citing Ark. R. Civ. P. 26(e)(2)).
>
> In the instant case, Dickie never denied that his responses to Martha's
> discovery requests omitted his Exxon stock and that he failed to supplement his
> discovery responses. In addition, Dickie neither denied that his statement of net worth
> at the time of the parties' divorce omitted the disputed stock, nor did he deny that he
> presented false testimony by stating his statement of worth was complete. Thus, the
> trial court did not err in ruling that Dickie had committed fraud.

*Dickson*, 316 Ark. At 250–51, 206 S.W.3d at 233.

In the case at bar, Jeffrey did not fail to provide Keiko with information about his

military retirement during discovery or otherwise. Indeed, Keiko admitted she knew about

Jeffrey's military retirement at the time she signed the property-settlement agreement. In

other words, this is not a case in which one party attempted to conceal a relevant fact from

another party. Keiko's allegation is that Jeffrey told her about the military retirement but

opined that she was not entitled to any of it. Keiko claims that she relied on Jeffrey's opinion

and did not obtain a lawyer to determine her rights. She admits that she had the opportunity

to hire a lawyer, but she chose not to. That she chose not to because Jeffrey told her it would

be too expensive and they would "be broke" and "homeless" if she did does not elevate

these facts to the standard set forth in *Dickson* for constructive fraud.

There was testimony at the hearing that Keiko was an intelligent woman who was told by others, and who admitted that she knew and understood, that she could hire a lawyer. She testified that she signed the agreement without reading it because she was "upset." The circuit court's finding that Jeffrey's statement was one of opinion, not fact, is not clearly erroneous. In addition, its finding that Keiko's reliance on Jeffrey's legal opinion regarding his military retirement was neither reasonable nor justifiable is also not clearly erroneous. Accordingly, we affirm the court's order denying her motion.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *J.T. Skinner*, for appellant.

*Gregg, Farris & Bumpers, Attorneys at Law*, by: *Fuller Bumpers*, for appellee.