Cite as 2020 Ark. App. 155

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–19–123

| | |
|---|---|
| RANDY LEE DEASON<br><br>APPELLANT<br><br>V.<br><br>ANGELA DEASON<br>APPELLEE | **Opinion Delivered** March 4, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-17-2090]<br><br>HONORABLE BETH BRYAN, JUDGE<br><br>AFFIRMED |

### N. MARK KLAPPENBACH, Judge

Randy Deason and Angela Deason were divorced by decree of the Washington County Circuit Court. Randy appeals the court's division of property, arguing that the court erred in failing to set aside a deed and in failing to divide certain marital property. We find no error and affirm.

The parties were married on July 29, 2016, but separated many times before the final separation on February 5, 2018. Both parties described a turbulent relationship. Angela testified that Randy threw her out of their home twice during the marriage, and she left on her own other times due to his drinking and cheating. She said that he lied to her and called her names, but she kept going back to him because she loved him and believed his promises that things would be better. Randy testified that they both drank too much and called each other names, and Angela moved out several times when she got mad. Randy said that Angela would leave, get into debt, and then come back asking him to get her out of debt. Randy said that he took her back because he loved her. They were both arrested following domestic disputes on two occasions.

Angela filed for divorce in March 2017 and October 2017 but had both cases dismissed. She filed for divorce a third time on December 15, 2017, but less than a week later, the parties reconciled, and Randy wrote a check to Angela's lawyer to pay for the case to be dismissed. Despite the check having been cashed, it was subsequently revealed that the case was never dismissed. Both parties testified, however, that they believed the case had been dismissed.

The real property at issue is land split off from a tract Randy owned prior to the marriage. The parties planned to sell the property they were living on and build their "dream house" on the split-off land. Concrete for the foundation was poured. Randy executed a quitclaim deed granting to himself and Angela approximately 2.5 acres of his original tract of land. Angela was unclear about when she had prepared the deed, but she said that Randy had her fill out the paperwork from a packet he had bought at Office Depot. She said that it was Randy's choice to execute the deed, and she did not give him anything for it. The parties went to the courthouse together and filed the deed on January 29, 2018. One week after the deed was filed, the parties separated for the final time. On February 14, 2018, Angela filed an amended complaint for divorce, amending the December 2017 complaint that had never been dismissed.

Randy testified that he would not have signed a deed granting Angela an interest in his property if he had known that she still had a divorce complaint pending against him. Angela maintained that, like Randy, she thought the complaint had been dismissed at the time the deed was filed. She denied tricking him into executing the deed. Angela requested that the court order the property sold with the proceeds split between them. Randy asked that the court set the deed aside on the basis of fraud and fraudulent inducement.

The circuit court announced its findings from the bench, dividing many pieces of disputed property and debts and denying Angela's request for alimony. Regarding the real property, the court found that when the deed was filed, both parties believed that the divorce had been dismissed, and they both intended to build their "dream house" on the property. The court found that there was a valid delivery of the deed, that the deed was a gift from Randy to their marriage, and that there was no evidence of fraud. Because it was deemed marital property, the court ordered the property to be sold with the proceeds split equally unless the parties agreed on another division. Randy subsequently filed a motion to alter or vacate the divorce decree, arguing, in part, that the deed was procured through fraud or undue influence and that the court failed to distribute all the marital property, including the proceeds from the sale of a dog. The motion was deemed denied, and Randy timely appealed.

Although we review traditional equity cases de novo on the record, we do not reverse unless we determine that the circuit court's findings were clearly erroneous. *Young v. Young*, 101 Ark. App. 454, 278 S.W.3d 603 (2008). A circuit court's findings of fact are clearly erroneous when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings, we defer to the circuit court's superior position to determine the credibility of witnesses and the weight to be accorded their testimony. *Id.*

Randy first argues that the deed granting Angela an interest in his real property should have been set aside for either constructive or actual fraud. To establish fraud in Arkansas, a plaintiff must prove that the defendant intentionally misrepresented a material fact and that the plaintiff was damaged by justifiably relying on that misrepresentation. *Wagster v. Wagster*, 2013 Ark. App. 616. Constructive fraud, as opposed to actual fraud, does not include the elements

3

of actual dishonesty or intent to deceive. *Hobson v. Entergy Ark., Inc.*, 2014 Ark. App. 101, 432 S.W.3d 117. It is defined as a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others. *Id.*

Randy argues that Angela intended to deprive him of his property by simulating affection, misrepresenting that the divorce was dismissed, and leaving him only one week later. He claims that he was reasonably justified in relying on her false declarations about her intent to remain in the marriage. However, he concedes that this is a "generous interpretation" of the facts. In arguing that the court should have at least found constructive fraud, Randy contends that Angela breached her equitable duty to ensure that the divorce action was dismissed or tell him it would not be dismissed before encouraging him to make the gift and taking him to the courthouse to record the deed.

We find no error in the circuit court's conclusion that Randy failed to prove fraud. The circuit court found that from the time the deed was recorded until the separation, both parties intended to remain in the marriage and build a house on the property. The circuit court was in the superior position to judge the credibility of the witnesses. There was no testimony that Angela encouraged Randy to execute the deed, that she "took him" to record the deed, or that the deed was part of a promise to save the marriage. Accordingly, Randy's arguments based on these erroneous facts must fail.

Randy next argues that the deed should have been set aside because Angela was the dominant party in the relationship who procured the deed through undue influence. Once a spouse has shown that a confidential relationship existed with the other and that the other was the dominant party in the relationship, it is presumed that a transfer of property from the former to the latter was invalid due to coercion and undue influence. *Young*, *supra*. In such a case, the

spouse to whom the property was transferred bears the burden of rebutting the presumption by producing evidence showing that the transfer of property was freely and voluntarily executed. *Id.* However, before the presumption of invalidity can be invoked, the transferring party must not only claim that the receiving party was the dominant one but must also establish that this party occupied such a superior position of dominance or advantage as would imply a dominating influence. *Id.*

Randy argues that Angela was clearly the domineering partner in the relationship because she was always the one who left, and he was "love blind" and "bent to her every whim." He claims that Angela beat him, routinely pawned the gifts he bought her, prepared the deed and took him to record it, and left him seven days later. We hold that the credible evidence at trial does not support his description of the relationship. The allegation that Angela beat Randy is based on her November 2016 arrest for aggravated assault on a family or household member, but there was no testimony explaining this incident or the resolution of the charge, which encompasses conduct other than "beating." Regarding pawning gifts, Angela testified that she sold some items during their separations in order to pay bills and have money to live on; she claimed that Randy would not allow her to have a job while they were together. She further testified that she was never allowed to make any decisions in the marriage. The circuit court specifically found Angela credible in her testimony that she was induced to reconcile due to Randy's promises to change. We conclude that no presumption of undue influence applied because the evidence did not show that Angela occupied such a superior position of dominance or advantage as would imply a dominating influence.

For his last point, Randy argues that Angela should be ordered to pay him half of the money she received from selling a dog. The only testimony regarding the dog was provided

5

by Angela. She testified that Randy bought her a French bulldog puppy for $1800, and while they were separated, she sold it for $1000 to pay bills. Randy argues that because the dog was acquired during the marriage, the proceeds from its sale were marital property that should have been distributed equally between the parties. He contends that a finding that the dog was a gift to Angela would be in error because "Angela's continual undue influence and fraudulent conduct regarding her affections and reconciliation unfairly swayed Randy to buy the dog." We find no error in the circuit court's failure to award Randy half the proceeds from the sale of the dog. Angela testified that Randy bought her the dog, suggesting that it was a gift, and Randy provided no testimony that he was claiming a marital interest in this property. Accordingly, we affirm the divorce decree.

Affirmed.

GRUBER, C.J., and VIRDEN, J., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Freeman Law Firm, PLC*, by: *Mark Freeman*, for appellee.